480 S.E.2d 462

**Patricia A. BLEJSKI, Respondent,**

v.

**James Thomas BLEJSKI, Appellant.**

**No. 2617.**

Court of Appeals of South Carolina.

Submitted Dec. 3, 1996.

Decided Jan. 13, 1997.

William J. Clifford, North Charleston, for appellant.

David L. DeVane, Charleston; and D. Mark Stokes, North Charleston, for respondent.

PER CURIAM:

This is an action for separate maintenance and support filed by Patricia Blejski (wife). The parties entered into a settlement agreement which was incorporated into an order of the court. James Blejski (husband) appeals from an order of the

trial court which nullified the settlement order and granted a new trial *de novo* on all issues. We reverse.[1]

## I. FACTS

After the wife discovered the husband, a Chief Warrant Officer in the United States Navy, impregnated a married enlisted female in his command, she filed this action for, *inter alia*, separate support and maintenance, alimony, custody of the children, child support, possession of the marital home, and an equitable division of the husband's military retirement. The husband answered and counterclaimed for, *inter alia*, custody of the parties' children, and for an equitable division of the parties' property and debts. Temporary custody of the children was awarded to the husband due to the wife's psychiatric condition.

In February 1993, the family court held a final hearing on the wife's action for separate maintenance and the husband's counterclaim. Prior to the hearing, and after some three hours of negotiations, the parties informed the family court that they had agreed to a settlement which they wished the court to approve. During discussion of the terms of the settlement with the court and in response to some disagreement by the parties' attorneys as to whether the wife would waive any interest in the husband's military retirement, the following colloquy took place:

THE COURT: You know, the Supreme Court said you don't get—he doesn't have any interest in her retirement until it vests. She doesn't have any interest in his until it vests. His doesn't vest until 20. Hers doesn't vest until normally 5 or 6 years, you know, under civilian plans, sometimes 10 years. So there is no interest for him—

WIFE'S COUNSEL: At this point we agree there is no interest [that the wife can claim in the husband's retirement].

THE COURT: Well, I'm not going to try this case, you know, come back in here in 5 years and try this case over again. You know, we're going to settle it all now or we ain't settling it. Because I'm not going to come back here in 5

---

1. Because oral argument would not aid the court in resolving any issue on appeal, we decide this case without oral argument pursuant to Rule 215, SCACR.

years and have to hassle 2 days worth of testimony of what these people had in 1993.

(WIFE'S COUNSEL CONFERS WITH WIFE OFF THE RECORD)

WIFE'S COUNSEL: She will waive whatever interest.

HUSBAND'S COUNSEL: And we certainly waive any interest he has in her retirement.

After the above discussion, the court questioned the parties as to their competency and voluntary assent to the settlement. At the hearing, the wife had documents from her therapists which stated that her mental health had improved and that she was "assertive and independent." The judge approved the agreement as fair and reasonable, and he signed an order adopting the terms of the agreement on March 12, 1993.

On March 29, 1993, the wife, through her new attorney, filed a motion pursuant to Rule 59(a)(2) and 59(e), SCRCP, to reconsider the March 12, 1993 order or alternatively for a new trial. In support of the motion, the wife filed an affidavit in which she asserted: (1) that she was "depressed and distraught" at the time of the February 1993 hearing; (2) that she was misled by her attorney as to her potential entitlement to alimony and an interest in her husband's retirement benefits; (3) that she could have "explored" the retirement issue on appeal but for erroneous advice from her attorney; (4) that she could not afford her expenses or support herself; and (5) that her attorney misled her into thinking the February hearing would result in a decree of divorce.

At the November 28, 1994 hearing on the motion,[2] the wife testified that her attorney "pulled [her] out of the courtroom and [told her] that Judge Biggs was already mad at [her], because [she] went to [husband's] Commanding Officer to seek financial assistance." The wife also testified her attorney told her that she "stood a chance of losing [her] children to [husband] if [she] did not take this deal." On both direct and cross-examination, however, the wife testified (1) that "I would have made a deal with the devil to get my kids back," (2) that custody was the main goal that she wished to achieve in a settlement, (3) that she told the judge and her therapists all agreed she was mentally sound and "assertive and indepen-

---

2. In the interim between the filing of the motion and this hearing, the wife filed bankruptcy and moved to Illinois.

dent," and (4) that she would "say anything" to get out of this agreement which dissatisfied her.

The deposition of the wife's first attorney (attorney) was admitted into evidence at the hearing. In the deposition he testified the settlement negotiations were at arms' length and exhaustive, as they lasted three hours and involved many proposals and counter-proposals between the parties. The attorney stated that he relied on husband's counsel's statement that the husband's commander had recommended discharge from the service, and that husband would be discharged as soon as the appropriate approval came from Washington. The attorney stated further, however, that he had experience with military law, and in his opinion an officer who committed adultery with a member of the officer's command probably would be disciplined by discharge. Consequently, the attorney felt that the agreement waiving a claim to retirement was a good deal for the wife because, in his opinion, the husband was "going to be virtually penniless in a matter of months." The attorney stated that the husband's retirement was not vested at the time of the hearing, and that his understanding of the law at the time was that unvested retirement benefits were not divisible. Moreover, the attorney did not feel that custody was a major factor in the wife's decision to waive her interest in the husband's retirement because the attorney believed the wife would prevail on the custody issue if the case went to trial. He denied telling the wife she should agree to the settlement or she might lose custody. The attorney noted that the wife was an active participant in the settlement and had advice from family members during the negotiations. He stated he did not coerce the wife into waiving any interest in the husband's retirement. Finally, the attorney denied that the wife was "depressed or distraught" at the hearing.

On May 8, 1995, the family court issued an order granting the wife a new trial *de novo* on all issues. The family court judge referred to the above quoted excerpt from the February 1993 hearing, and reasoned:

> Upon this Court's review of the transcript of the hearing, the Court is concerned that its own comments concerning the law might have affected [Wife's] decision regarding the retirement in the agreement. The *Ball* case was handed down in August 1994.

The *"Ball"* case to which the judge referred is *Ball v. Ball,* 312 S.C. 31, 430 S.E.2d 533 (Ct.App.1993), which held that unvested retirement benefits are divisible in marital litigation.[3]

The husband appeals the granting of a new trial, arguing (1) that the wife cannot by the instant proceedings raise the issue of retirement benefits, which she waived at trial, (2) that no reasonable or credible evidence supports a finding that the wife was under duress, (3) that the court's comments were an insufficient reason to grant a new trial, and (4) that the wife has wasted the assets she was awarded at the final hearing and, thus, the parties "cannot fairly be restored to their pretrial positions."

## II. GRANTING OF NEW TRIAL

We will reverse the family court's granting of a new trial only where the grant constituted an abuse of discretion amounting to an error of law. *Ortowski v. Ortowski,* 237 S.C. 499, 117 S.E.2d 860 (1961); *Evatt v. Campbell,* 234 S.C. 1, 106 S.E.2d 447 (1959). While we afford great deference to the family court judge's exercise of that discretion, we cannot affirm the granting of a new trial when the basis is insufficient as a matter of law. For several reasons we conclude that the family court's remarks and the alleged attorney pressure were insufficient as a matter of law to vitiate the settlement agreement and grant a new trial.[4]

When approving a settlement agreement, a family court judge must, first, determine if assent to the agreement is voluntarily given, and, second, determine if the agreement is "within the bounds of reasonableness from both a procedural

---

3. *Ball* was decided in May of 1993, almost two months after the family court judge issued his order, and more than two months after the hearing. Before *Ball,* only vested military pension benefits were divisible as marital property. *See Tiffault v. Tiffault,* 303 S.C. 391, 401 S.E.2d 157 (1991) (discussing the history of the state of the law regarding the divisibility of military pension benefits). Thus, the family court judge's comments about the law were correct at the time they were made.

4. A reading of Rule 59(a)(2) indicates that in non-jury actions a new trial may be granted "for any of the reasons for which rehearings have heretofore been granted in the courts of [this] state." One of the

and substantive perspective." *Burnett v. Burnett,* 290 S.C. 28, 347 S.E.2d 908 (Ct.App.1986). Although the *Burnett* procedure is primarily concerned with influences outside of the bench, a family court judge properly should, consistent with these principles, grant a new trial if judicial misconduct affected the proceedings below. *Cf. Lutz v. Commissioner,* 593 F.2d 45 (6th Cir.1979), *cited in Colunga v. Young,* 722 F.Supp. 1479 (W.D.Mich.1989) (noting that judicial misconduct may consist of actual bias or hostility, or the appearance of bias or hostility on the part of the judge). Inappropriate comments from the bench which induced a party to enter into a settlement under duress would warrant the granting of a new trial *de novo. In re the Marriage of Hitchcock,* 265 N.W.2d 599 (Iowa 1978). A party is under duress if "improper external pressure or influence . . . practically destroys the free agency of a party and causes him to do an act or form a contract not of his own volition." *Willms Trucking Co. v. JW Constr. Co.,* 314 S.C. 171, 178, 442 S.E.2d 197, 202 (Ct.App.1994) (citing *Cherry v. Shelby Mut. Plate Glass & Cas. Co.,* 191 S.C. 177, 4 S.E.2d 123 (1939)). Moreover, duress is viewed with a subjective test which looks at the individual characteristics of the person allegedly influenced, and duress does not occur "if the victim has a reasonable alternative to succumbing and fails to take advantage of it." *Restatement (Second) of Contracts* § 175 cmt. b & c (1981). However, extra-judicial settlement of issues in marital litigation is encouraged, *Drawdy v. Drawdy,* 275 S.C. 76, 268 S.E.2d 30 (1980), and a trial judge's comments merely to encourage settlement are not improper.

▇▇▇▇ Here, the court made no determination that the wife was under duress when she entered in the settlement agreement. While the wife claims she was subjected to duress resulting in her assent to an unfair agreement, the family court granted the new trial because it was "concerned that its

---

grounds for granting a new trial is the discovery of new evidence after trial. Assuming the wife's motion for a new trial is predicated on after-discovered evidence, we hold she has not met the test for after-discovered evidence. *Bettis v. Busbee,* 283 S.C. 502, 323 S.E.2d 536 (Ct.App.1984). Certainly, the conduct of her attorney was known to her at trial. Moreover, the *Ball* case had not been decided at the time the wife filed her motion for new trial. Thus, a misrepresentation or misunderstanding of the law by the wife and/or her attorney, even if otherwise available, could not have formed the basis for her motion for new trial.

own comments concerning the law to the [wife] and her attorney might have affected her decision regarding the retirement." Even if the judge's comments somehow influenced the wife's decision, that fact alone does not constitute anything close to duress by the family court judge. The wife was described by her mental health expert as "assertive and independent," and she was represented by counsel and surrounded by family and friends throughout both the negotiations and the hearing when she told the judge she voluntarily assented to the agreement. *Cf. Kilcawley v. Kilcawley*, 312 S.C. 425, 440 S.E.2d 892 (Ct.App.1994) (discounting a wife's claim that she was under the influence of drugs when assenting to a marital settlement by noting that the wife told the family court judge that she was sober at the hearing). Moreover, this case is unlike *Hitchcock*, which reversed a judicially-approved marital settlement due to the judge's statements, in that the trial judge here did not force settlement by essentially telling the parties how he would rule on matters involving factual questions and the exercise of discretion. *Hitchcock*, 265 N.W.2d at 605. *Cf. Urlaub v. Urlaub*, 348 N.W.2d 454 (N.D.1984) (holding that the trial judge did not prejudge issues but merely encouraged parties to settle). Here, in contrast, the trial judge correctly stated the law as it existed at the time of the hearing, and, in any event, the legal rule involved would not have required an exercise of discretion by the judge. The trial judge merely encouraged settlement by stating a dispositive rule of law in effect at the time of the hearing.[5] Thus, we hold as a matter of law the judge's comments did not warrant a new trial.

The wife also points to actions by her attorney to support the claim that she was under duress at the time she agreed to the settlement. Even if the attorney told the wife that the judge was mad at her and she should accept the settlement or she possibly could lose custody of her children,

---

5.  10 U.S.C.A. § 1408(c)(1) & (d)(2) (Supp.1996) allow a court to award a former spouse a portion of military retirement if, according to the law of the state jurisdiction, such retirement is considered as property and not income, and the spouse was married to the person in the military during at least 10 years of the military member's service which is creditable in determining eligibility for retirement. Thus, the law of the jurisdiction is dispositive. *Cf. Brown v. Brown*, 279 S.C. 116, 302 S.E.2d 860 (1983).

500

these statements would not amount to duress as to make the wife's assent involuntary and require a new trial. Essentially, these statements, if made, amounted to the wife's attorney giving his best advice that if the wife did not accept the settlement, the case would have to be tried and the wife potentially could have lost custody of her children. The wife had the reasonable alternative of taking her chances with a trial. Moreover, the ultimate decision was the product of a rational judgment call in a bargaining process where the wife achieved what she wanted most, custody of her children. The attorney testified that all indications were that the husband would be discharged from the service, thus losing his retirement benefits. This judgment was reasonable at the time even though the husband ultimately was not discharged. Similarly, the settlement is not invalid because the attorney did not, and could not, predict how this court would subsequently resolve the issue of divisibility of retirement benefits in *Ball*. Therefore, we reject the wife's claim she was subject to duress from her attorney.

## III. CONCLUSION

We hold that neither the family court's comments, nor the actions of the wife's attorney, were sufficient to justify the grant of a new trial. Accordingly, the order of the family court granting a new trial is

**REVERSED.**

CURETON, GOOLSBY and ANDERSON, JJ., concur.