520 S.E.2d 330

**Audrey M. SWENTOR, Respondent,**

v.

**Norman G. SWENTOR, Appellant.**

**No. 3023.**

Court of Appeals of South Carolina.

Heard Jan. 13, 1999.

Decided July 6, 1999.

Rehearing Denied Sept. 11, 1999.

Robert L. Jackson, of Jackson & Jackson, of Columbia, for appellant.

Samuel F. Crews, III, of Crews Law Firm; and Thomas M. Neal, III, both of Columbia, for respondent.

HOWELL, Chief Judge:

This case involves the question of arbitration in the family court setting. Norman G. Swentor appeals from the family court's decision to set aside a property division established through binding arbitration. We reverse and remand.

## I.

Audrey M. Swentor (the Wife) and Norman G. Swentor (the Husband) agreed to submit to arbitration the property issues arising from their impending divorce. On June 18, 1996, the parties signed a contract with Resolute Systems, Inc., providing for binding arbitration. The contract stated that the award was conclusive as to the issues involved in the arbitration and that the parties "shall be deemed to have consented that judgment upon the arbitration award may be entered in any federal or state court having jurisdiction thereof."

After a hearing, the arbitrator issued his decision, which awarded the Wife the doll-making and restoration business bought during the marriage but awarded the Husband the marital home, where the doll business was located. Unhappy with the result, the Wife filed a motion to reconsider. The arbitrator denied the motion.

Before the arbitrator denied the Wife's motion to reconsider, the Wife filed an action in family court seeking, among other things, separate maintenance and support, and equitable distribution of the marital property. The Wife sought to set aside the arbitration award on the ground that the award was "grossly inequitable on its face." The Husband moved to dismiss the Wife's action, contending that the arbitration agreement divested the family court of subject matter jurisdiction to apportion the marital property. Thereafter, the Husband filed a motion requesting the family court to confirm the arbitration award. On November 13, 1996, the family court held a hearing "for the purpose of taking testimony on the

issue of whether the contract entered by the parties was freely and voluntarily entered and whether the parties were knowledgeable and informed of the meaning of 'binding arbitration.' "

The Wife, who had been through the family court system "four or five times," testified that she thought arbitration would be less expensive than litigating the property issues in court. The Wife agreed to arbitrate with the hope that "we could settle and just present the results to [the] court later for approval." The Wife testified that she freely and voluntarily entered into the agreement to arbitrate and that she understood the arbitration to be binding. She also testified, however, that she believed she "was bound to take the results of this agreement to family court for ultimate approval or disapproval." The Wife testified that "I was never advised that the family court did not have the ultimate decision. If I had been, I would never have agreed to it." The Wife also testified that she believed she was required to go through arbitration or mediation before she could proceed in family court in Richland County.

The Husband testified that he understood the arbitration to be binding, which he defined as meaning that "once you have done something that you are obligated." The Husband testified that he understood that the arbitration award would be presented to the family court for approval "for enforcement purposes."

By order dated December 13, 1996, Judge Riddle denied the Husband's motion to confirm the award. Judge Riddle set aside the arbitration award, concluding the award "is not binding on the Family Court in this matter on the grounds that the parties agreed that the Family Court had final approval of the award."

In December 1996, the Wife served the Husband with her amended complaint seeking, inter alia, a divorce on the ground of physical cruelty and equitable distribution of marital property. The Husband answered and counterclaimed, and again sought to have the Wife's equitable apportionment claims dismissed for lack of subject matter jurisdiction. By order dated February 7, 1997, Judge Riddle denied the Husband's motion for relief. By order dated February 10, 1997, Judge

Williams granted the Wife's motion for certain temporary relief.

Judge Gray held a hearing on the merits of the Wife's action on May 12 and 13, 1997. Prior to trial, the Husband again sought to dismiss that portion of the action seeking equitable distribution on the ground the family court lacked subject matter jurisdiction to determine the issue.

Judge Gray issued his final order on May 27, 1997. Judge Gray denied the Wife's request for a divorce, equitably divided the marital property, and again denied the Husband's motion to dismiss. Judge Gray interpreted Judge Riddle's order as concluding that parties in a domestic relations matter could not, through arbitration or mediation, divest the family court of subject matter jurisdiction over the property issues. Judge Gray stated in his order that "this Court holds the view that an agreement to arbitrate and the outcome would be treated in the same manner as any other agreement reached or claimed to have been reached by the parties in domestic relations matters." Thus, Judge Gray determined that the agreement to arbitrate and the arbitration award were subject to review and approval by the family court. Judge Gray then concluded that he was bound by. Judge Riddle's December 1996 order in which she determined that the arbitration award should be set aside.

On appeal, the Husband contends the family court erred in failing to grant his multiple motions to dismiss the Wife's equitable distribution claims for lack of subject matter jurisdiction. The Husband argues that the parties' agreement to submit the issue of equitable apportionment to binding arbitration divested the family court of jurisdiction to redetermine merits of the property issues. The Husband further contends that the Wife failed to allege any ground that would warrant vacating the award under the statutory law governing judicial review of arbitration awards.

The Wife, of course, strongly disagrees with the Husband's argument. In essence, the Wife's position is that there can be no binding arbitration in family court. The Wife contends that the family court has a duty to review all settlement agreements to ensure the fairness of the agreements. Thus, the Wife argues that the family court has the power to

consider the substantive fairness of the arbitration award. According to the Wife, applying the general law of arbitration to arbitration agreements in domestic relations matters "would reduce the Family Court to the status of a 'rubber stamp' with no true authority to evaluate agreements between the parties, and determine their equity and fairness."

## II.

■ Arbitration agreements in South Carolina are governed by the Uniform Arbitration Act (the Arbitration Act), S.C.Code Ann. § 15–48–10 through –240 (Supp.1998). The Arbitration Act provides that a "written agreement to submit *any* existing controversy to arbitration ... is valid, enforceable and irrevocable, save upon such grounds as exist at law or in equity for the revocation of any contract." S.C.Code Ann. § 15–48–10(a) (Supp.1998) (emphasis added). The Act sets forth the only exceptions to its applicability as follows:

(1) Any agreement or provision to arbitrate in which it is stipulated that this chapter shall not apply or to any arbitration or award thereunder;

(2) Arbitration agreements between employers and employees or between their respective representatives unless the agreement provides that this chapter shall apply; *provided,* however, that notwithstanding any other provision of law, employers and employees or their respective representatives may not agree that workmen's compensation claims, unemployment compensation claims and collective bargaining disputes shall be subject to the provisions of this chapter and any such provision so agreed upon shall be null and void. An agreement to apply this chapter shall not be made a condition of employment.

(3) A pre-agreement entered into when the relationship of the contracting parties is such that [sic] of lawyer-client or doctor-patient....

(4) Any claim arising out of personal injury, based on contract or tort, or to any insured or beneficiary under any insurance policy or annuity contract.

S.C.Code Ann. § 15–48–10(b) (Supp.1998).

■ By its terms, then, the Arbitration Act governs agreements to arbitrate equitable apportionment claims or other

claims arising from a marriage, given that such agreements are not excluded by the Arbitration Act. Moreover, this Court recently concluded that the Arbitration Act is applicable to contracts involving equitable apportionment issues. *See Ex parte Messer,* 333 S.C. 391, 396, 509 S.E.2d 486, 488 (Ct.App. 1998) (applying Arbitration Act to provision in separation agreement requiring parties to submit disputes to arbitration). Thus, we have no difficulty concluding that parties may agree to submit equitable apportionment claims to arbitration, and that the Arbitration Act governs such agreements.[1] Given this conclusion, we must now determine whether the family court has jurisdiction over cases where the parties have agreed to binding arbitration.

We first note that there is nothing in the Arbitration Act that could be viewed as depriving the family court of jurisdiction. Under the Act, an arbitration award must be confirmed by "the court" unless a party timely seeks to correct, modify, or vacate the award. *See* S.C.Code Ann. § 15–48–120 (Supp. 1998) ("Upon application of a party, the court shall confirm an award, unless within the time limits hereinafter imposed grounds are urged for vacating or modifying or correcting the award, in which case the court shall proceed as provided in §§ 15–48–130 and 15–48–140."). The Act provides that "[t]he term 'court' means any court of competent jurisdiction of this State. The making of an agreement described in § 15–48–10 providing for arbitration in this State confers jurisdiction on the court to enforce the agreement under this chapter and to enter judgment on an award thereunder." S.C.Code Ann.

---

1. In support of her argument that the Arbitration Act does not apply in the family court setting, the Wife points out that Chief Justice Finney's March 1996 order creating pilot alternative dispute resolution programs in Florence and Richland counties does not require family court litigants to engage in mediation or arbitration. According to the Wife, this omission supports her position "that the general law of arbitration does not apply in Family Court." We disagree. While the Richland and Florence county programs do not *require* family court litigants to participate, there is nothing in the order establishing the program or in the Arbitration Act prohibiting family court litigants from voluntarily agreeing to submit their disputes to binding arbitration. Once they agree, then the Arbitration Act governs, unless they agree otherwise. *See Messer,* 333 S.C. at 391, 509 S.E.2d at 488 (applying Arbitration Act to provision in separation agreement requiring parties to submit disputes to arbitration).

§ 15–48–180 (Supp.1998). Therefore, if the family court otherwise has subject matter jurisdiction over the matter, the presence of an agreement to arbitrate does not deprive the court of jurisdiction.

Clearly, the family court has subject matter jurisdiction over actions seeking divorce or separate maintenance and support. *See* S.C.Code Ann. § 20–7–420(2) (Supp.1998) (Granting family court exclusive jurisdiction over actions "[f]or divorce a vinculo matrimonii, separate support and maintenance, legal separation, and in other marital litigation between the parties, and for settlement of all legal and equitable rights of the parties in the actions in and to the real and personal property of the marriage and attorney's fees, if requested by either party in the pleadings."). Likewise, it is clear that parties may enter into contracts resolving issues of alimony and equitable distribution and that the family court has jurisdiction over those contracts. *See* S.C.Code Ann. § 20–3–130(G) (Supp.1998) ("The Family Court may review and approve all agreements which bear on the issue of alimony or separate maintenance and support, whether brought before the court in actions for divorce from the bonds of matrimony, separate maintenance and support actions, or in actions to approve [an] agreement where the parties are living separate and apart. The failure to seek a divorce, separate maintenance, or a legal separation does not deprive the court of its authority and jurisdiction to approve and enforce the agreements."); S.C.Code Ann. § 20–7–479 (Supp.1998) ("The family courts of this State have subject matter jurisdiction over all contracts relating to property which is involved in a proceeding under this article and over the construction and enforcement of those contracts."); *see also Moseley v. Mosier,* 279 S.C. 348, 353, 306 S.E.2d 624, 627 (1983) ("[J]urisdiction for all domestic matters, whether by decree or by agreement, will vest in the family court. In all decrees entered after this decision, the parties may contract concerning their property settlement and alimony, but the submitted agreement must be approved by the family court."). Once approved, an agreement may be enforced by the family court through its contempt powers, unless the agreement unambiguously denies the court continuing jurisdiction over the matter. *See Moseley,* 279 S.C. at 353, 306 S.E.2d at 627 ("With the court's approval,

the terms become a part of the decree and are binding on the parties and the court. However, unless the agreement unambiguously denies the court jurisdiction, the terms will be modifiable by the court and enforceable by contempt.").[2]

However, if a written contract designates property as nonmarital or otherwise provides that certain property shall not be considered part of the marital estate, the family court lacks jurisdiction over the property included within the agreement. *See* S.C.Code Ann. § 20–7–473 (Supp.1998) ("The [family] court does not have jurisdiction or authority to apportion nonmarital property."); S.C.Code Ann. § 20–7–473(4) (Supp. 1998) (Property excluded from the marital estate by written contract of the parties is considered non-marital property); *Gilley v. Gilley*, 327 S.C. 8, 11, 488 S.E.2d 310, 312 (1997) (Because the parties' pre-nuptial agreement provided that property acquired during the marriage or owned at the time of the marriage would not be the subject of any claims for equitable apportionment, the family court did not have subject matter jurisdiction over husband's claim for equitable apportionment of marital property.); *Bailey v. Bailey*, 330 S.C. 326, 330, 498 S.E.2d 891, 892–93 (Ct.App.1998) (Agreement providing that all property owned by each party prior to the marriage would remain that party's separate property divested family court of jurisdiction over the property and fell within the jurisdiction of the circuit court.).

---

2. While an agreement concerning alimony or child support may be modified and enforced by the family court unless the agreement clearly provides otherwise, an agreement regarding equitable apportionment claims is final and may not be modified by the parties or the court, although it may be enforced by the family court unless the agreement provides otherwise. *See* S.C.Code Ann. § 20–7–472 (Supp.1998) ("The court's order as it affects distribution of marital property shall be a final order not subject to modification except by appeal or remand following proper appeal."); *Thompson v. Ballentine*, 298 S.C. 289, 291, 379 S.E.2d 896, 898 (1989) (Section 20–7–472 prohibited collateral attempt to modify property agreement that was made a part of the divorce decree); *Green v. Green*, 327 S.C. 577, 581, 491 S.E.2d 260, 262 (Ct.App.1997) (concluding that family court erred by reopening and modifying portions of property settlement agreement incorporated into divorce decree, noting that "the law in South Carolina is exceedingly clear that the family court does not have the authority to modify court ordered property divisions").

In this case, the parties simply agreed to submit all property issues to arbitration. We do not believe such an agreement can be viewed as an agreement to exclude the property from the marital estate. Thus, we conclude that the family court had subject matter jurisdiction over the property and claims encompassed within the arbitration agreement. This conclusion, however, simply means that an arbitration agreement and award may properly be brought before the family court for confirmation and enforcement purposes. *See* S.C.Code Ann. § 15–48–150 (Supp.1998) ("Upon the granting of an order confirming, modifying or correcting an award, judgment or decree shall be entered in conformity therewith and be enforced as any other judgment or decree."). The extent of the court's powers upon presentation of the agreement and award, however, is an entirely different question.[3]

As noted above, the general rule is that agreements regarding alimony, child support, or property issues must be presented to the family court for approval. *See Moseley,* 279 S.C. at 353, 306 S.E.2d at 627 ("In all decrees entered after this decision, the parties may contract concerning their property settlement and alimony, but the submitted agreement must be approved by the family court."); *Drawdy v. Drawdy,* 275 S.C. 76, 77, 268 S.E.2d 30, 30 (1980) (Family court has a "duty to rule upon the fairness of a property settlement agreement reached by the litigants before incorporating it into the decree."). "When approving a settlement agreement, a family court judge must, first, determine if assent to the agreement is voluntarily given, and, second, determine if the agreement is 'within the bounds of reasonableness from both a procedural and substantive perspective.'" *Blejski v. Blejski,* 325 S.C. 491, 497–98, 480 S.E.2d 462, 466 (Ct.App.1997); *see also Funderburk v. Funderburk,* 286 S.C. 129, 131, 332 S.E.2d 205, 206 (1985) ("If the judge concludes that the husband entered [into] the contract freely and voluntarily, he shall next examine the agreement's fairness under all the circumstances. If the court determines that the husband's generosity toward the wife in the property settlement arose from a desire to quickly

---

**3.** While the Husband couches his challenge to the family court's actions in terms of subject matter jurisdiction, we nonetheless conclude that his appeal also encompasses this more general issue of the family court's power to set aside the arbitration award.

get out of the marriage or to atone for past wrongs, he shall weigh these factors heavily. An agreement shall not be voided as unfair merely because the agreement did not divide the property on the basis of the parties' relative incomes and contributions to the marriage. All of the relevant factors must be weighed."); *Drawdy*, 275 S.C. at 77, 268 S.E.2d at 30–31 ("We think it incumbent on the family court, where one party seeks to enforce and the other to repudiate a property settlement agreement to be incorporated into a subsequent divorce decree, to satisfy itself the agreement is a fair contractual end to the parties' marital claims. This cannot be done without examining the agreement in light of the economic circumstances and contributions of each party. In this case evidence above and beyond whether the agreement was validly executed, which is virtually all the family court considered, is essential to a determination of its fairness."). As will be explained more fully below, however, we conclude that the family court's traditional power to approve property and separation agreements, which includes the power to consider the substantive fairness of the agreement, simply does not extend to arbitration agreements and awards presented to the family court.

As indicated in the discussion above, the family court's general obligation to review and approve agreements involves two distinct questions—whether the parties freely and voluntarily entered into the agreement, and whether the substance of the agreement is fair. A review of the cases involving the first inquiry—whether an agreement was entered into freely and voluntarily—reveals that family courts will refuse to approve agreements under essentially the same circumstances that would render any other type of contract unenforceable, such as fraud, duress, or mistake. *See, e.g., Blejski,* 325 S.C. at 498–99, 480 S.E.2d at 466–67 (where family court approved settlement, wife not entitled to new trial where evidence did not establish that wife was under duress when she entered into the agreement); *Forsythe v. Forsythe,* 290 S.C. 253, 255–56, 349 S.E.2d 405, 406 (Ct.App.1986) ("In the present case we find no evidence that the agreement was not freely and voluntarily entered into. Upon being questioned by the trial judge, the wife answered affirmatively that she understood the agreement, had entered into it of her own free will and accord, was not under duress or fear, and was satisfied with the

services of her lawyer."); *Burnett v. Burnett*, 290 S.C. 28, 30, 347 S.E.2d 908, 909 (Ct.App.1986) (concluding wife freely and voluntarily entered into separation agreement where there was no "evidence that Mrs. Burnett was compelled to enter into the agreement as a result of being overreached or subjected to any duress, nor is there any evidence that she was not of sound mind or under any unusual stress, other than the stress normally attendant to the breakup of a marriage."); *Sauls v. Sauls*, 287 S.C. 297, 300, 337 S.E.2d 893, 895 (Ct.App. 1985) ("Based on the evidence here, we find the agreement was freely and voluntarily entered into by Mr. and Mrs. Sauls. Both parties had the benefit of legal advice before signing it. Mrs. Sauls testified she contacted an attorney to draft the separation agreement, paid him for his services and discussed the terms prior to signing the agreement. Mr. Sauls testified he met with Mrs. Sauls at her attorney's office to discuss the terms of the agreement and had another attorney review the agreement before the parties signed it."). Because section 15–48–10(a) of the Arbitration Act allows an arbitration agreement to be set aside "upon such grounds as exist at law or in equity for the revocation of any contract," the family court's inquiry into whether an agreement was entered into freely and voluntarily may not be inconsistent with the provisions of the Arbitration Act.

An inquiry into the substantive fairness of an agreement, however, would be inconsistent with the Arbitration Act. To allow a family court judge to set aside an arbitration award because the judge found the award to be unfair would severely undermine the finality of arbitration agreements. *See, e.g., Pittman Mortgage Co. v. Edwards*, 327 S.C. 72, 76, 488 S.E.2d 335, 337 (1997) ("Generally, an arbitration award is conclusive and courts will refuse to review the merits of an award."); *Trident Technical College v. Lucas & Stubbs, Ltd.*, 286 S.C. 98, 111, 333 S.E.2d 781, 788–89 (1985) (An arbitration award is "presumptively correct, and '[i]t is the general rule that the courts will refuse to review the merits of an arbitration award.' Otherwise, an arbitration award would signify 'the *commencement*, not the end, of litigation.'") (emphasis original) (citations omitted). Thus, such a power would be fundamentally at odds with the very reason that the public policy of this state and the country favors arbitration—because it provides " 'a relatively quick and inexpensive resolution of con-

tractual disputes by avoiding the expense and delay of extended court proceedings.'" *Trident,* 286 S.C. at 104, 333 S.E.2d at 785 (quoting *Diapulse Corp. of America v. Carba Ltd.,* 626 F.2d 1108, 1110 (2d Cir.1980)). As our Supreme Court noted in Trident,

> In order to advance the underlying purposes of arbitration, the scope of judicial review is necessarily restricted. "[T]he court's function in confirming or vacating an arbitration award is severely limited. If it were otherwise, the ostensible purpose for resort to arbitration, i.e., avoidance of litigation, would be frustrated...." Indeed, "[b]road judicial review on the merits would render resort to arbitration wasteful and superfluous."

286 S.C. at 105, 333 S.E.2d at 785 (citations omitted); *see also Farris v. Alaska Airlines, Inc.,* 113 F.Supp. 907, 908 (D.Wash. 1953) ("The primary function of arbitration is to serve as a substitute for and not a prelude to litigation.").[4]

Given our determination that the Arbitration Act and the family court's general power to review and approve agreements in domestic relations cases are fundamentally incompatible, we conclude that the Arbitration Act prohibits the family court from exercising this power when presented with arbitration agreements. This Court must presume that, at the time the Arbitration Act was enacted, the legislature was aware of the family court's power to review and approve property and separation agreements.[5] *See, e.g., State v. Bridgers,* 329 S.C. 11, 14, 495 S.E.2d 196, 197–98 (1997) ("The General Assembly is presumed to be aware of the common law."); *Berkebile v.*

---

4. The wisdom of this position is illustrated by the facts in this case. Here, the Wife was interested in arbitrating the equitable distribution claims because she believed it would be quicker and less expensive than pursuing the issues in family court, a forum with which the Wife was intimately familiar and of which she apparently was less than enamored. Yet when the Wife was dissatisfied with the arbitrator's decision, she sought the help of the family court. By forcing the parties to go through a full-blown trial in the family court after they had completed the arbitration process, the Wife exponentially increased the time and expense required to resolve the divorce and related issues.

5. The Arbitration Act became effective on May 8, 1978, *see* Act No. 492, § 26, 1978 S.C. Acts 1478, 1486, long after the family court's general authority to review and approve property and separation agreements was established. *See, e.g., Fischl v. Fischl,* 272 S.C. 297, 300, 251

*Outen,* 311 S.C. 50, 53, 426 S.E.2d 760, 762 (1993) ("A basic presumption exists that the legislature has knowledge of previous legislation when later statutes are passed on a related subject."). If the legislature had intended family courts to exercise this power over arbitration agreements and awards, it would have either exempted domestic relations matters from the scope of the Act, or it would have expressly provided that arbitration awards involving domestic relations matters could be set aside if the family court determined that the award was unfair. Instead, we conclude that the purpose and framework of the Arbitration Act, as well as the limited grounds upon which the Act permits an arbitration award to be set aside, reveal the legislature's intention that the agreements to arbitrate and the resulting arbitration awards be treated the same in family court as in any other court. *See Nuckolls v. Great Atlantic & Pacific Tea Co.,* 192 S.C. 156, 161, 5 S.E.2d 862, 864 (1939) ("[I]t is not presumed that the Legislature intended to abrogate or modify a rule of the common-law by the enactment of a statute upon the same subject; that it is rather to be presumed that no change in the common-law was intended unless the language employed clearly indicates such an intention . . . .").

Accordingly, we conclude that family courts presented with arbitration agreements and awards must proceed, as any other court, in accordance with the terms of the Arbitration Act. Thus, an agreement to arbitrate may be set aside by the family court only upon proof of "grounds as exist at law or in equity for the revocation of any contract." S.C.Code Ann. § 15–48–10(a) (Supp.1998). The court may correct or modify an arbitration award only in accordance with the provisions section 15–48–140, and the court may vacate the award only upon the establishment of one of the grounds set forth in

S.E.2d 743, 744–45 (1979) (discussing family court's obligation to review and approve settlement agreement entered into in March 1978); *see also White v. White,* 210 S.C. 336, 343, 42 S.E.2d 537, 540 (1947) ("The Divorce Decree specifically adopts, confirms and approves the written contract or separation agreement as the valid and subsisting contract of the parties."); *Ex parte Jeter,* 193 S.C. 278, 280, 8 S.E.2d 490, 491 (1940) ("On or about the day that this contract [a separation agreement executed by a husband and wife] was duly executed[,] an action was commenced in the Court of Common Pleas for Union County by Mrs. Jeter against Mr. Jeter for the purpose of having said agreement approved and confirmed by the Court.").

section 15–48–130, or the rarely applied non-statutory ground of "manifest disregard or perverse misconstruction of the law." *Trident,* 286 S.C. at 108, 333 S.E.2d at 787. Otherwise, the family court must confirm the arbitration award. *See* S.C.Code Ann. § 15–48–120 (Supp.1998) ("Upon application of a party, the court shall confirm an award, unless within the time limits hereinafter imposed grounds are urged for vacating or modifying or correcting the award, in which case the court shall proceed as provided in §§ 15–48–130 and 15–48–140.").[6]

In this case, although the Wife sought to avoid the consequences of the arbitration because she believed the award to be "grossly inequitable on its face," Judge Riddle set aside the arbitration award and concluded it was "not binding on the Family Court in this matter on the grounds that the parties agreed that the Family Court had final approval of the award." Thus, it appears Judge Riddle determined that, notwithstanding the provisions of the arbitration agreement, the arbitration agreed to by the parties in fact was not binding arbitration. The question, then, is whether this conclusion is sufficient to set aside the arbitration award.

For the purposes of this opinion, we will assume that the Wife's participation in the arbitration does not somehow prevent her from challenging the arbitration agreement itself. *See Garrell v. Blanton,* 311 S.C. 201, 204, 428 S.E.2d 8, 10 (Ct.App.1993) (Party's "participation in the arbitration without seeking a stay and without objection precludes his challenge of the agreement to arbitrate."); *aff'd,* 316 S.C. 186, 188, 447 S.E.2d 840, 841 (1994) ("We agree with [the] Court of Appeals that Garrell waived any objection to arbitration by participating without objection."). We will likewise assume that her complaint in the family court properly seeks to set aside the arbitration agreement under S.C.Code Ann. § 15–48–10(a). Even with these assumptions, however, we conclude that there is no basis under the Arbitration Act for setting aside the agreement to arbitrate.

---

6. Our holding, of course, is limited to arbitration agreements resolving issues of property or alimony, and does not apply to agreements involving child support or custody. *See Moseley,* 279 S.C. at 351, 306 S.E.2d at 626 ("[F]amily courts have continuing jurisdiction to do whatever is in the best interests of the child regardless of what the separation agreement specifies.").

From our review of the record,[7] we conclude that the Husband understood he was entering into binding arbitration and that the arbitration award would be presented to the family court for approval only for enforcement purposes. The "approval" referred to by the Husband is really nothing more than the confirmation of an arbitration award contemplated by the statute. While the Wife may have believed that the arbitration award was not truly binding, this belief, at most, amounts to a unilateral mistake on the part of the Wife and is insufficient to warrant recission of the arbitration agreement under S.C.Code Ann. § 15–48–10(a). *See, e.g., Alderman v. Bivin,* 233 S.C. 545, 552, 106 S.E.2d 385, 389 (1958) (A contract may be rescinded on grounds of unilateral mistake if the mistake was "induced by the fraud, deceit, misrepresentation, concealment, or imposition in any form of the party opposed in interest to the reformation or rescission, without negligence on the part of the party claiming the right."); *Richardson's Restaurants, Inc. v. National Bank of S.C.,* 304 S.C. 289, 297, 403 S.E.2d 669, 673 (Ct.App.1991) ("At common law, a party to a contract cannot avoid it on the ground that he made a mistake if there has been no misrepresentation, there is no ambiguity in the terms of the contract, and the other party has no notice of the mistake and acts in good faith. An erroneous impression taken up from the suggestion of the party's own mind does not relieve him from the contract.") (citations omitted); *see also Smothers v. United States Fidelity & Guar. Co.,* 322 S.C. 207, 210, 470 S.E.2d 858, 860 (Ct.App.1996) ("It is the general rule that a court of equity will not, where a mistake of law is disclosed, grant relief from the consequences thereof in the absence of fraud or undue influence.").

As to the arbitration award itself, we note that the Wife did not allege in her complaint that the award should be vacated under S.C.Code Ann. § 15–48–130(a), nor does she argue on appeal that there are proper grounds for vacating the award. Therefore, because we have concluded that the agreement to

7. Because this is a family court matter, this Court has jurisdiction to find facts in accordance with our view of the preponderance of the evidence. *See, e.g., Epperly v. Epperly,* 312 S.C. 411, 414, 440 S.E.2d 884, 885 (1994).

arbitrate is valid and enforceable, we agree with the Husband that the family court erred by setting aside the arbitration award.[8] *See* S.C.Code Ann. § 15–48–120 (Supp.1998) ("Upon application of a party, the court *shall* confirm an award, unless within the time limits hereinafter imposed grounds are urged for vacating or modifying or correcting the award....") (emphasis added).

Accordingly, for the foregoing reasons, the appealed orders, including that portion of Judge Gray's order apportioning the marital estate, are hereby reversed, and we remand for entry of an order confirming the arbitration award.

**REVERSED AND REMANDED.**

ANDERSON and STILWELL, JJ., concur.

---

**8.** In her brief, the Wife argues that the Husband did not appeal the substantive findings made in the various orders to support the setting aside of the arbitration award and that the Husband "only challenges the authority of the Family Court to entertain the issue [of equitable apportionment.]" Thus, the Wife contends that "[t]acit in the [Husband's] failure to appeal these remaining questions is an admission that the Family Court's decision to disapprove the arbitration decision was fair and equitable under the facts of this case." We disagree. Although lumped together under one issue on appeal, we believe the Husband's brief sufficiently presents for appellate review the question of whether the family court had the power to set aside the arbitration agreement and the question of whether the award should have been set aside based upon the evidence presented to the court.