# THE STATE OF SOUTH CAROLINA
## In The Supreme Court

Gunjit Rick Singh, Petitioner,

v.

Simran P. Singh, Respondent.

Appellate Case No. 2020-000457

---

## ON WRIT OF CERTIORARI TO THE COURT OF APPEALS

---

Appeal from Charleston County
Gordon B. Jenkinson, Family Court Judge
Judy L. McMahon, Family Court Judge
Jocelyn B. Cate, Family Court Judge
Jack A. Landis, Family Court Judge
Daniel E. Martin, Jr., Family Court Judge

---

Opinion No. 28057
Heard June 17, 2021 – Filed September 8, 2021

---

## AFFIRMED AS MODIFIED

---

Robert N. Rosen, of Rosen Law Firm, LLC, of Charleston, Sheila McNair Robinson, of Moore Taylor Law Firm, P.A., of West Columbia, and Katherine Carruth Goode, of Winnsboro, for Petitioner.

O. Grady Query, Michael W. Sautter, Michael Holland Ellis, Jr., and Alexander Woods Tesoriero, all of Query Sautter & Associates, LLC, of Charleston, for Respondent.

**JUSTICE HEARN:** The question presented in this case is whether South Carolina law permits issues relating to child custody and visitation to be submitted to binding arbitration with no oversight by the family court and no right of review by an appellate tribunal. We believe the answer is clearly and unequivocally no.

## FACTS/PROCEDURAL HISTORY

After nearly seventeen years of marriage, Respondent Simran Singh (Mother) and Petitioner Gunjit Singh (Father) separated in January of 2012. They subsequently entered into a settlement agreement later that year which resolved all issues arising from their marriage, including custody and visitation matters involving their two children, then aged eleven and two.[1] Pursuant to that agreement, Mother received primary custody, and the parties consented to submit any future disputes regarding child support or visitation to a mutually agreed-upon arbitrator, specifically providing that his or her decision would "be binding and non-appealable." The family court approved the agreement and granted the parties a divorce in February of 2013.

Approximately nine months later, Father filed an action in family court seeking modification of custody, visitation, and child support, alleging Mother had violated a provision of the agreement when she failed to return to South Carolina with the children after embarking on a cross-country tour as a motivational speaker. From January through August of 2014, four family court judges issued decisions—one dismissing Father's complaint due to the parties' decision to arbitrate; a second issuing a consent order to arbitrate; and two approving amended agreements to arbitrate. The agreements contained the following provision: "The parties fully understand that the decision of the Arbitrator is final and binding upon them and that they do not have the right to apply to this Court or to any other Court for relief if either is unsatisfied with the Arbitrator's decision."[2]

---

[1] The parties' older child is now emancipated.

[2] Our review of the settlement agreement and the subsequent agreements to arbitrate reveals that each amended version strengthened the arbitration provisions. For example, the settlement agreement approved by the family court in February 2013 provided for arbitration of future disputes pertaining to child support, relocation, and visitation, but it did not specifically address custody. Further, the family court judge stated this on the record during the hearing on the approval of the settlement agreement:

The two judges who ruled on the amended agreements found them to be "fair and equitable" as well as enforceable by the court. The arbitrator—a well-respected Charleston family law attorney and mediator—issued a "partial" arbitration award in August, finding a substantial and material change of circumstance affecting the welfare and custody of the minor children, and awarding Father temporary custody. A thirty-two-page final arbitration award was issued the next month, awarding custody to Father. A fifth family court judge issued an order in January of 2015 confirming both the partial and final arbitration awards.

However, within days of the arbitrator's final award and months before the family court approved it, Mother—represented by new counsel—filed a motion for emergency relief, asking the court to vacate the arbitration awards and the prior court orders approving the parties' agreements to arbitrate. Following a hearing on that motion, the court issued an order confirming both the partial and final arbitration awards "with finality" and denied the motion seeking to vacate the awards as premature. It thus appears that four different family court judges approved—at times apparently without a hearing—the parties' agreements to arbitrate the issues

---

[A]s to that part of your agreement which deals with your two children, I want you to understand that even if I approve this agreement, if there happens to be some change in circumstances in the future, either of you may be able to come back before me, or another judge, and ask the court to make changes in that part of the agreement.

In January of 2014, following the Father's request for modification of custody, the family court approved an agreement to arbitrate the issues—including custody—and additionally stated that the arbitrator's decision was final and not appealable. In March, the parties amended their agreement to arbitrate, which was approved by the family court, by reiterating the finality of the arbitrator's decision and adding a $10,000 monetary penalty as a consequence of challenging that decision. In August, the family court approved a supplemental amended agreement to arbitrate, which retained the aspects above in addition to a new provision acknowledging the arbitration rules do not expressly authorize arbitration of children's issues, but releasing any potential claims against the arbitrator or the parties' attorneys for exceeding "their authorization and/or the authorization of the applicable ADR rule of the Family Court." Thus, both the scope of the issues subject to arbitration and the parties' implicit recognition of the uncharted legal territory of arbitrating children's issues expanded from the time of the settlement agreement to the supplemental amended agreement to arbitrate.

involving the children, and a fifth judge confirmed the validity of the arbitration award.

Thereafter, Mother filed five separate Rule 60(b)(4), SCRCP, motions to vacate all the orders approving the parties' agreements to arbitrate. Although Mother requested the motions be consolidated for a hearing before a single judge in the interest of judicial economy, that motion was denied. Five separate hearings ensued, all of which ultimately resulted in orders denying mother's motions. Mother thereafter filed five notices of appeal from orders denying her motions, and the court of appeals consolidated them. The court of appeals issued its unanimous decision in December of 2019, holding that the parties could not divest the family court of jurisdiction to determine issues relating to custody, visitation, and child support. *Singh v. Singh*, 429 S.C. 10, 30, 837 S.E.2d 651, 662 (Ct. App. 2019).[3] One month prior thereto, another panel of the court of appeals issued a decision in *Kosciusko v. Parham*, 428 S.C. 481, 505, 836 S.E.2d 362, 375 (Ct. App. 2019), holding the family court did not have subject-matter jurisdiction to approve the binding arbitration of children's issues.[4] We granted certiorari in this case because the court of appeals based its decisions on slightly different grounds, and affirm as modified.

## ISSUE

Did the court of appeals err in concluding the family court could not delegate its exclusive jurisdiction to determine the best interest of the child?

## STANDARD OF REVIEW

Generally, appellate courts review the decision of the family court de novo, with the exception of evidentiary and procedural rulings. *Lewis v. Lewis*, 392 S.C. 381, 386, 709 S.E.2d 650, 652 (2011); *Stoney v. Stoney*, 422 S.C. 593, 595 n.2, 813 S.E.2d 486, 487 n.2 (2018) ("*Lewis* did not address the standard for reviewing a family court's evidentiary or procedural rulings, which we review using an abuse of discretion standard."). While this consolidated appeal results from multiple orders denying Mother's Rule 60(b) motions, the underlying question stems from the family

---

[3] We note the court of appeals concluded the $10,000 penalty provision was "astonishing." Because neither party has challenged the monetary penalty before us on appeal, we express no opinion as to whether that provision is enforceable.

[4] Following the issuance of the court of appeals' decision in *Kosciusko*, the parties in that case apparently settled their differences and no petition for certiorari was filed.

court's legal authority to delegate its jurisdiction to an arbitrator, which is a question of law for the Court to review de novo.

## DISCUSSION

We begin our analysis with the recognition that family courts are statutory in nature and therefore possess only that jurisdiction specifically delegated to them by the South Carolina General Assembly, which was granted authority over these issues in Article V, section 12 of the South Carolina Constitution. Pursuant to that constitutional grant of authority, the General Assembly created the family courts and established the parameters of their jurisdiction. S.C. Code Ann. § 63-3-530 (2010 & Supp. 2020) (stating the family court has exclusive jurisdiction over forty-six matters listed); *State v. Graham*, 340 S.C. 352, 355, 532 S.E.2d 262, 263 (2000) ("The family court is a statutory court created by the legislature and, therefore, is of limited jurisdiction."). Accordingly, the family court's jurisdiction is "limited to that expressly or by necessary implication conferred by statute." *Graham*, 340 S.C. at 355, 532 S.E.2d at 263. Significantly, subsection 63-3-530(39) provides the family court with exclusive jurisdiction:

> [T]o require the parties to engage in court-mandated mediation pursuant to Family Court Mediation Rules or to issue consent orders authorizing parties to engage in any form of alternate dispute resolution *which does not violate the rules of the court or the laws of South Carolina*; provided however, the parties in consensual mediation must designate any arbiter or mediator by unanimous consent subject to the approval of the court[.]

S.C. Code Ann. § 63-3-530(39) (2010) (emphasis added). While this provision envisions arbitration in some areas, our court rules and jurisprudence confirm that children's matters are not within the ambit of issues subject to arbitration.

Our Alternative Dispute Resolution Rules (ADR) contemplate both mediation and arbitration of family court matters, but implicitly limit binding arbitration to issues of property and alimony. *See* Rule 3(a), SCADR (requiring "all contested issues in domestic relations actions filed in family court" be subject to mediation unless the parties agree to conduct arbitration); Rule 4(d)(1), SCADR (providing "[i]f there are unresolved issues of *custody or visitation*, the court may . . . order an *early mediation* of those issues upon motion of a party or upon the court's own motion") (emphasis added); Rule 4(d)(2), SCADR (stating "the parties may submit the issues of property and alimony to binding arbitration in accordance with subparagraph (5)"); Rule 4(d)(5), SCADR (noting "[i]n lieu of mediation, the parties may elect to submit

issues of property and alimony to binding arbitration in accordance with the Uniform Arbitration Act, S.C. Code Section 15-48-10 et. seq., or submit all issues to early neutral evaluation pursuant to these rules"). We agree with the court of appeals' decision in *Kosciusko*, 428 S.C. at 498, 836 S.E.2d at 371, which applied the canon of construction *expressio unius est exclusio alterius*, meaning to express or include one thing implies the exclusion of another. Accordingly, because the drafters of Rule 4(d), SCADR, expressly included arbitration of property and alimony but only addressed custody and visitation in the context of early mediation, it can be fairly implied that the rule does not permit binding arbitration of children's issues.[5] Thus, to the extent that the court of appeals' opinion in this case suggests our ADR rules do not prohibit arbitration of children's issues, we modify that portion accordingly.

Further, our construction of the ADR rules mirrors the jurisprudence of this state, which has consistently recognized the authority of the family courts over issues regarding children. In the seminal decision of *Moseley v. Mosier*, this Court stated that "family courts have continuing jurisdiction to do whatever is in the best interests of the child regardless of what the separation agreement specifies." 279 S.C. 348, 351, 306 S.E.2d 624, 626 (1983). Following *Moseley*, the court of appeals decided *Ex parte Messer* involving a separation agreement which contained an arbitration provision. 333 S.C. 391, 395, 509 S.E.2d 486, 487-88 (Ct. App. 1998). The court held the provision invalid as not meeting the requirement of conspicuousness, but it reiterated that "*Moseley* makes it clear that *except for matters relating to children*, over which the family court retains jurisdiction to do whatever is in their best interest, parties to a separation agreement may 'contract out of any continuing judicial supervision of their relationship by the court.'" *Id.* (quoting *Moseley*, 279 S.C. at 353, 306 S.E.2d at 627) (emphasis added). Approximately a year after *Messer*, the court of appeals again emphasized the distinction between arbitrating issues pertaining to

---

[5] We acknowledge that the Uniform Family Law Arbitration Act contemplates arbitration of children's issues while also granting the family court the power to vacate an unconfirmed arbitration award if the moving party demonstrates the award is not in the best interest of the child. *See* Unif. Family Law Arbitration Act § 19(b) (Nat'l Conference of Comm'rs on Unif. State Laws 2016). In determining the best interests of the child, the drafter's of this model legislation provided two choices for reviewing the arbitration award—either de novo or limited to "the record of the arbitration hearing and facts occurring after the hearing." *Id.* at § 19(d). Only four states have enacted this legislation, and South Carolina is not one of them. *See Family Law Arbitration Act*, UNIFORM L. COMMISSION, https://www.uniformlaws.org/committees/community-home?CommunityKey=ddf1c9b6-65c0-4d55-bfd7-15c2d1e6d4ed (last visited Sept. 7, 2021).

children versus property and alimony matters. In *Swentor v. Swentor*, the court declined to set aside an arbitration award concerning the equitable apportionment of the marital estate, but specifically limited its decision to property and alimony issues. 336 S.C. 472, 486 n.6, 520 S.E.2d 330, 338 n.6 (Ct. App. 1999) ("Our holding, of course, is limited to arbitration agreements resolving issues of property or alimony, and *does not apply to agreements involving child support or custody*.") (emphasis added).

Accordingly, we reject Father's contention that the General Assembly has in any way authorized family courts to approve agreements to arbitrate children's issues. Instead, our reading of the statutes and court rules is consistent with the analysis of the court of appeals in *Kosciusko*: by specifically providing for the arbitration of property and alimony issues in the ADR rules, the General Assembly intended that children's issues not be subject to arbitration. We likewise reject Father's contention that the statements in *Messer* and *Swentor* placing children's issues in a different category from property and alimony matters was mere dicta; rather, that language was integral to those decisions because it delineated the scope of permissible arbitration in family court.

Moreover, apart from the ADR rules and our case law, children's fundamental constitutional rights are at stake here. *See Ex parte Tillman*, 84 S.C. 552, 560, 66 S.E. 1049, 1052 (1910) ("[T]here is a liberty of children above the control of their parents, which the courts of England and this country have always enforced."). As the court of appeals so aptly stated: "Longstanding tradition of this state places the responsibility of protecting a child's fundamental rights on the court system." *Singh*, 429 S.C. at 23, 837 S.E.2d at 658. We agree with the court of appeals that the family court cannot delegate its authority to determine the best interests of the children based on the *parens patriae* doctrine.[6] Parents may not attempt to circumvent children's rights to the protection of the State by agreeing to binding arbitration with no right of judicial review. This has never been the law in South Carolina, and our decision today unequivocally holds arbitration of children's issues is not permitted.[7]

---

[6] *Parens patriae* is Latin for "parent of the country." *Alfred L. Snapp & Son, Inc. v. Puerto Rico, ex rel., Barez*, 458 U.S. 592, 600 n.8 (1982). This doctrine recognizes that it is the State's duty to protect those who cannot protect themselves, including minor children in this context. *Id.* at 600 (discussing the origins and development of *parens patriae*).

[7] In denying Mother's Rule 60(b) motions, two of the five family court judges found Mother was estopped from challenging the validity of the court orders and the

## CONCLUSION

Consistent with the reasoning herein, we affirm as modified the opinion of the court of appeals vacating the arbitration award and the underlying orders approving the parties' right to arbitrate issues involving their children. Custody of the minor child will continue to remain with Father until otherwise ordered by the Charleston County Family Court.

**AFFIRMED AS MODIFIED.**

**BEATTY, C.J., KITTREDGE, FEW and JAMES, JJ., concur.**

---

arbitration award. Father contends Mother did not appeal the estoppel finding, rendering it the law of the case and invoking the two issue rule. We believe Mother sufficiently challenged the estoppel findings both before the family court and on appeal. While Mother did not use the term "estoppel" in her opening brief before the court of appeals, she did argue the family court erred by focusing on the parents' conduct rather than the children's constitutional rights. *Buist v. Buist*, 410 S.C. 569, 575, 766 S.E.2d 381, 383-84 (2014) (noting that a party need not use the precise legal term to preserve an issue, but "the party nonetheless must be sufficiently clear in framing his objection so as to draw the court's attention to the precise nature of the alleged error"). Further, Mother specifically argued that parents cannot waive the type of constitutional rights at issue, and while waiver and estoppel are distinct concepts, the doctrines sometime "merge into each other with almost imperceptible gradations, so that it is difficult to determine the exact point where one doctrine ends and the other begins." *Janasik v. Fairway Oaks Villas Horizontal Prop. Regime*, 307 S.C. 339, 344, 415 S.E.2d 384, 388 (1992) (citation omitted). *See also Johnson v. S.C. Dep't of Prob., Parole, & Pardon Servs.*, 372 S.C. 279, 284, 641 S.E.2d 895, 897 (2007) ("[L]ack of subject matter jurisdiction in a case may not be waived and ought to be taken notice of by an appellate court."). Accordingly, the procedural doctrines Father relies on do not apply. *See Atl. Coast Builders & Contractors, LLC v. Lewis*, 398 S.C. 323, 329, 730 S.E.2d 282, 285 (2012) (stating preservation rules are not a "gotcha" game aimed at embarrassing attorneys or harming litigants and noting it is "good practice" to reach the merits when preservation is unclear).