0030

Robin S. JACKSON, Appellant, v. Sandra G. JACKSON, Respondent.

(310 S. E. (2d) 827)

Court of Appeals

*Morris D. Rosen* and *Robert N. Rosen*, Charleston, *Richard J. Paul*, North Charleston, *for appellant.*

*Ann M. Stirling*, Charleston, *for respondent.*

December 28, 1983.

SHAW, Judge:

This appeal is from a divorce granted to the Respondent, Sandra G. Jackson, on the grounds of continuous one year separation and adultery. Appellant, Robin S. Jackson, is appealing the Trial Judge's finding that a Separation Agreement entered into by the parties was invalid and the orders under the divorce decree. We reverse in part, affirm in part and remand.

The parties were first married in September of 1969, and a son was born. Mrs. Jackson discovered her husband's infidelities and moved to Florida to obtain a quicker divorce. An attempt at reconciliation failed and Mr. Jackson initiated and obtained a Florida divorce in 1972 shortly before he left on a tour of military duty in the Philippines.

Upon returning from the Philippines, the parties reconciled and remarried in Charleston in July of 1976. However, this marriage quickly deteriorated. Mrs. Jackson and her son suffered from Mr. Jackson's neglect, bad investments, unemployment and mental and physical abuse. Mrs. Jackson contracted severe colitis requiring constant medical treatment.

Finally, the parties agreed to divorce. In contemplation of the divorce, the parties entered into a Separation Agreement which covered the matters of alimony, child support, child custody, visitation rights and division of the marital property. A Haitian divorce was obtained in January of 1979.

At the hearing, the Trial Judge agreed with Mrs. Jackson that the Separation Agreement was unfair and held it invalid. The Judge then issued orders on the matters covered by the invalid agreement.

While parties are encouraged to reach an extra judicial agreement on the marital issues, such an agreement is still subject to review by the Family Court Judge to determine its fairness. *Fischl v. Fischl,* 272 S. C. 297, 251 S. E. (2d) 743 (1979). Even though the parties were represented by an attorney of Mrs. Jackson's own choosing in drawing up this agreement, the evidence clearly shows that the agreement resulted from undue influence and over-reaching on the part of Mr. Jackson. At the time the agreement was entered, Mrs. Jackson was taking large doses of sedatives and other medica-

tions to combat her illness. Mrs. Jackson had recently been beaten by her husband and had been subject to constant mental abuse. She was in no condition to oppose her husband who wrote the entire agreement. The parties' attorney never discussed the agreement with Mrs. Jackson alone and made no inquiry into the factual situation behind the agreement. There was no abuse of discretion in finding the agreement invalid.

■ The Trial Judge awarded Mrs. Jackson $700/month in child support. In doing so, the Judge relied on Mr. Jackson's 1979 income which included a capital gain of $5,500 from the sale of a house — a noncurring event. Also, the fact that Mr. Jackson's monthly expenses exceed his net monthly income was apparently overlooked. Based on these facts, the amount of child support awarded was excessive. *Smith v. Smith*, 264 S. C. 624, 216 S. E. (2d) 541 (1975).

■ Section 20-3-160 allows the Trial Judge to provide security for the award of child support. But since $700/month was an excessive amount of child support, a $40,000 life insurance policy as security for excessive child support is excessive also.

■■ Mr. Jackson was ordered to pay his wife $14,000 in division of the marital property. He owns several houses purchased at tax sales capable of being converted into rental property. This real estate was valued by the lower court at an amount less than what Mr. Jackson believed the property is worth. Equitable distributions are made when one spouse has made a material contribution to the acquisition of the property acquired during the marriage. *Wilson v. Wilson*, 270 S. C. 216, 241 S. E. (2d) 566 (1978). During the second marriage, Mrs. Jackson worked while her husband was unemployed, obtained his current job for him and cared for their child while Mr. Jackson spent most nights staying out late drinking. Mrs. Jackson has much less property and a lower earning capacity than her husband due to her health. *Wilson, supra.* Finally, Mr. Jackson's inexcusable conduct caused the divorce. *Simmons v. Simmons*, 275 S. C. 41, 267 S. E. (2d) 427 (1980). These are factors which control the amount to be distributed; however, evidence does not support the $14,000 awarded.

Mr. Jackson was allowed to have their son visit him so long as the child is not exposed to persons not related to Mr. Jackson by blood or marriage. This restriction was intended to prevent the child from visiting in the presence of Mr. Jackson's live-in girlfriend. The restriction is overly broad and unreasonable as there was no finding that the presence of Dr. Sutker, a clinical psychologist, would adversely affect the welfare of the child. *Davenport v. Davenport*, 265 S. C. 524, 220 S. E. (2d) 228 (1975). Even if this finding had been made, the restriction is overly broad in carrying out its intended purpose. Carried to its logical extreme, it would prevent the child from entertaining his own friends at his father's home.

The requirement that Mr. Jackson post a $10,000 bond in order to visit the child is not unreasonable. Mr. Jackson has threatend to take the child out of the country. His numerous overseas contacts make the threat a realistic possibility.

No amount of alimony was ordered to be paid but the lower court reserved the right to order alimony in the future. A $20,000 life insurance policy was required to be maintained as security for the future alimony. The payment of alimony terminates at death unless affirmatively charged to the estate. *Kennedy v. Kennedy,* 270 S. C. 348, 42 S. E. (2d) 417 (1978). Even though Section 20-3-130 allows the trial judge to order security for alimony, it was error for the lower court to order the maintenance of life insurance for a currently nonexistent obligation that may not arise in the future and will terminate at death. No life insurance is required in support of unordered alimony where the husband's estate is not charged with the duty to pay alimony.

Regarding attorney fees, we hereby deem that the trial judge abused his discretion. We believe the amount awarded by the Family Court, $6,000, to be excessive especially when measured by the beneficial results finally obtained by the respondents. *See Robinson v. Robinson*, 277 S. C. 102, 282 S. E. (2d) 861 (1981), reducing an award of $4,414 to $2,500; *Cole v. Cole*, 274 S. C. 449, 265 S. E. (2d) 699 (1980), affirming $3,000 where "voluminous testimony" of eleven hundred pages; *Bass v. Bass*, 272 S. C. 177, 249 S. E. (2d) 905 (1978), affirming $1,200; *McCullough v. McCullough*, 271 S. C.

475, 248 S. E. (2d) 308 (1978), affirming $1,000; *Morris v. Morris*, 268 S. C. 104, 232 S. E. (2d) 326 (1977), reducing an award of $10,000 to $4,000.

Regarding the divorce, the husband abandoned this issue on appeal.

The trial judge was correct in dissolving the separation agreement. The issue of divorce and the visitation bond are also affirmed. The part of the Order requiring the maintenance of life insurance in support of unordered alimony is reversed. The issues of attorney fees, child support and the appropriate security therefor, the visitation restriction and the division of the marital property are reversed and remanded for a factual finding more consistent with the evidence presented.

Affirmed in part, revised in part, and remanded in part.

CURETON and GOOLSBY, JJ., concur.