665 S.E.2d 182

**John DOE, Appellant,**

v.

**Jane ROE, Respondent.**

**No. 4401.**

Court of Appeals of South Carolina.

Heard May 7, 2008.

Decided June 5, 2008.

Rehearing Denied Aug. 25, 2008.

Holly Huggins Wall, of Johnsonville, for Appellant.

Emma I. Bryson, of Columbia, for Respondent.

PIEPER, J.

John Doe (Father) appeals the family court's order terminating his parental rights to his biological child (Child) and ordering payment of his attorney's fees and $1,635.50 in guardian ad litem fees. We reverse and remand.

## FACTS

In July 2004, Jane Roe (Mother) learned she was pregnant and informed two men that one of them is Child's father.

Eight months later, on March 6, 2005, Child was born. Both potential fathers were at the hospital for Child's birth. The man excluded from being Child's biological father assisted Mother in the delivery room and served as Mother's birth coach.[1] Father was not permitted in the delivery room during Child's birth. While at the hospital the day after Child's birth, Mother indicated she was uncomfortable and wanted Father to leave. As a result, she requested that her father (Grandfather) ask Father to leave.

Less than a week after Child's birth and prior to any determination as to paternity, Grandfather called Father to meet with him to discuss the rights and responsibilities of parenthood should the paternity test reveal Father to be Child's biological father. During this conversation, Grandfather indicated that child support and visitation are inextricably linked. Grandfather further suggested the possibility of termination of parental rights should Father decide he did not want to assume parental responsibilities.[2] Additionally, Grandfather directed Father to the DSS website and indicated that the site includes a child support calculator.

On March 15, 2005, nine days after Child's birth, Grandfather informed Father a paternity test had excluded the other man as Child's father. The same day, Mother e-mailed photos of Child to Father. The next day, Father told his mother about the paternity test results, and the following day she visited Child with a gift.

On December 15, 2005, Father filed a complaint asking the court to establish his paternity and to award attorney's fees and costs. Father additionally sought an award of custody or liberal visitation and to issue a restraining order against Mother should his paternity be established. In Mother's answer, she agreed to Father's request for a paternity determination; she also counterclaimed, asking the court to terminate Father's parental rights (TPR) and to award attorney's fees and costs. Mother further requested: (1) that the court

---

1. The man excluded from being Child's biological father is now Mother's fiancé. Mother testified they began an exclusive relationship in December 2004 and became engaged in May 2005.

2. This conversation took place before the paternity test revealed Child's biological father.

hold in abeyance the issues of child support and visitation, pending the court's TPR decision; (2) that the court issue a restraining order against Father; and (3) that the court award attorney's fees and costs. In a temporary order, the court ordered paternity testing and appointed Patricia Forbis as Child's guardian ad litem (GAL). On June 8, 2006, Mother and Father agreed to bifurcate the issues in order to expedite a decision regarding TPR. Additionally, they agreed the court would thereafter determine GAL and attorney's fees only if Father's parental rights were terminated.

The hearing on the TPR issue was held on October 9 and 10, 2006. Child was then nineteen months old. At the call of the hearing, the court was advised a paternity test had determined Father was Child's father; neither party contested this finding.[3] In its written order of December 19, 2006, the court terminated Father's parental rights based upon its finding that clear and convincing evidence supported TPR on the statutory grounds of failure to visit and failure to support Child for six months and finding TPR was in Child's best interest. The court further ordered Mother and Father to pay their own attorney's fees, ordered Mother to pay GAL fees of $845.50, and ordered Father to pay GAL fees of $1,635.50. Father's petition for supersedeas was denied on June 6, 2007. This appeal followed.

## STANDARD OF REVIEW

In TPR proceedings, the best interest of the child is the paramount consideration. *Doe v. Baby Boy Roe*, 353 S.C. 576, 579, 578 S.E.2d 733, 735 (Ct.App.2003). Before parental rights can be permanently terminated, the alleged grounds for termination must be proven by clear and convincing evidence. *Richberg v. Dawson*, 278 S.C. 356, 357, 296 S.E.2d 338, 339 (1982). On appeal, this court may review the record and make its own determination whether grounds for termination are supported by clear and convincing evidence. *S.C. Dep't of Soc. Servs. v. Headden*, 354 S.C. 602, 609, 582 S.E.2d 419, 423 (2003). Despite this broad scope of review, however, we are

---

3. A paternity test conducted in March 2006 confirmed Father was Child's biological father; however, the family court was not notified of this prior to the October 2006 TPR hearing.

not required to disregard the findings of the family court, who saw and heard the witnesses, and was in a better position to assign comparative weight to their testimony. *Id.* In reviewing TPR cases, we note "[t]he termination of the legal relationship between natural parents and a child presents one [of] the most difficult issues this [c]ourt is called upon to decide." *Charleston County Dep't. of Soc. Serv. v. King,* 369 S.C. 96, 105, 631 S.E.2d 239, 244 (2006) (alteration in original) (citations omitted). As a result, "[w]e exercise great caution in reviewing termination proceedings and will conclude termination is proper only when the evidence clearly and convincingly mandates such a result." *Id.*

## LAW/ANALYSIS

In South Carolina, procedures for TPR are governed by statute. *See* S.C.Code Ann. §§ 20–7–1560 to 1582 (Supp.2007). The purpose of the TPR statute is:

> to establish procedures for the reasonable and compassionate termination of parental rights where children are abused, neglected, or abandoned in order to protect the health and welfare of these children and make them eligible for adoption by persons who will provide a suitable home environment and the love and care necessary for a happy, healthful, and productive life.

S.C.Code Ann. § 20–7–1560 (Supp.2007).

The family court may order TPR upon a finding of one or more of the eleven statutory grounds *and* a finding that TPR is in the best interest of the child. *See* S.C.Code Ann. § 20–7–1572 (Supp.2007). The TPR statute "must be liberally construed in order to ensure prompt judicial procedures for freeing minor children from the custody and control of their parents by terminating the parent-child relationship. The interests of the child shall prevail if the child's interest and the parental rights conflict." S.C.Code Ann. § 20–7–1578 (Supp. 2007).

■ Father first alleges it was improper for the family court to determine his paternity and terminate his parental rights in the same order. This issue is not preserved for our review.

■ This argument was not raised to the family court and is, therefore, not preserved for our review. "It is an axiomatic rule of law that issues may not be raised for the first time on appeal." *Talley v. S.C. Higher Educ. Tuition Grants Comm.*, 289 S.C. 483, 487, 347 S.E.2d 99, 101 (1986). Additionally, we note Father and Mother signed an order bifurcating the issues to expedite the TPR determination. *See Harrison v. Bevilac-qua*, 354 S.C. 129, 139–40, 580 S.E.2d 109, 114–15 (2003) (stating "petitioner cannot now complain the trial court erred when it took [his] own suggestion").

Next, Father asserts the family court erred in finding clear and convincing evidence exists to establish the statutory grounds of willful failure to visit and willful failure to support. Although we disagree that the family court erred with regard to these statutory grounds, we need not address this argument in light of our ruling on whether termination is in the best interest of the child.

■ Father argues the family court erred in determining TPR was in Child's best interest. We agree. "If the family court finds that a statutory ground for [TPR] has been proven, it must then find that the best interests of the child would be served by [TPR]." *Doe v. Baby Boy Roe*, 353 S.C. 576, 580, 578 S.E.2d 733, 735 (Ct.App.2003). In a TPR case, the best interest of the child is the paramount consideration. *Id.* at 579, 578 S.E.2d at 735. "The interests of the child shall prevail if the child's interest and the parental rights conflict." S.C.Code Ann. § 20–7–1578 (Supp.2007). However, "[t]he public policy of this state in child custody matters is to reunite parents and children." *Hooper v. Rockwell*, 334 S.C. 281, 296, 513 S.E.2d 358, 366 (1999); S.C.Code Ann. § 20–7–20. The supreme court has recognized a child's shared interest in preventing an erroneous termination of the familial bond with a child's natural parent. *Greenville County Dep't Soc. Servs. v. Bowes*, 313 S.C. 188, 196, 437 S.E.2d 107, 111 (1993). Furthermore, there is a presumption that it is in the best interest of a child to be in the custody of its biological parent. *Shake v. Darlington County Dep't of Soc. Servs.*, 306 S.C. 216, 222, 410 S.E.2d 923, 926 (Ct.App.1991) (citing *Moore v. Moore*, 300 S.C. 75, 79, 386 S.E.2d 456, 458 (1989)).

Terminating parental rights can forever sever the relationship between parent and child. As a result of the gravity of the effect of termination on a parent-child relationship, our courts have routinely held that a decision to terminate parental rights should be reached only when the evidence supports a finding that termination is in the best interest of the child. In an effort to protect an individual's parental rights to children born out of wedlock, this court, in *Charleston County Soc. Servs. v. Jackson,* reversed the family court's order terminating father's parental rights where father was incarcerated and unable to connect with child. 368 S.C. 87, 103, 627 S.E.2d 765, 774 (Ct.App.2006). In reasoning that TPR was not in child's best interest, the court stated:

> terminating Father's parental rights will not ensure *future stability* for Child. Moreover, keeping Father's parental rights intact *will not disrupt* Child's current living situation. Father does not gain custody of Child simply because the Department failed to terminate his parental rights at this time. Rather, by not terminating Father's parental rights, Father merely maintains his right to *connect* with Child as well as his *obligation* to support Child, emotionally, financially, or otherwise. The Department should, in the best interest of Child, *facilitate* this connection and accompanying obligation.

*Id.* (emphasis added). The *Jackson* court ruled in favor of father despite the inevitable lack of conventional support the incarcerated father could provide child while in prison. *Id.* In finding that termination was not in child's best interest, the court noted that the child resided in a therapeutic foster home and child's foster parents had not expressed an interest in adopting him. *Id.* Because there was no evidence that the foster parents had plans to adopt child, the court found terminating father's parental rights would not ensure future stability for child and keeping father's rights intact would not disrupt child's current living situation. *Id.*

 Here, as in *Jackson,* there is no indication that terminating Father's rights will ensure future stability for Child or that keeping Father's parental rights intact will disrupt Child's current living situation. Instead, keeping Father's parental rights intact simply allows Father to establish a relationship with Child and to provide emotional and financial

support for Child. While we acknowledge that there is some evidence to suggest that Mother had plans to marry and that fiancé may adopt Child, these plans have not been finalized. Further, at oral argument, nearly three years after Mother's engagement, counsel was unable to confirm such plans.[4] Thus, while we recognize that a stable family relationship may be in a child's best interest, we find the request herein to be premature based on the record presented. If anything, given Mother's situation and Father's demonstrated desire to establish a relationship with Child, we find that keeping Father's rights intact under these circumstances will only serve to benefit Child by allowing the familial bond between Father and Child to be furthered.

Moreover, Father is both capable and willing to provide the necessary emotional, financial, and other obligations embodied in a parent's right to care for a biological child. Since Father demonstrates his desire to establish a relationship with Child and because keeping Father's rights intact need not disrupt the quality of Child's life, the record fails to demonstrate that it would be in Child's best interest to terminate Father's parental rights at this time. Instead, based on the record, we find Father should have the opportunity to connect with Child in such manner deemed appropriate under the reasoned view of the family court.

■■■ Next, Father contends the family court's decision to terminate his parental rights violates his constitutional right to have a relationship with his biological child. Because this issue was not raised to the family court, it is not preserved for our review. Further, due to our disposition herein, we need not address this issue. *See Whiteside v. Cherokee County Sch. Dist. No. One,* 311 S.C. 335, 340, 428 S.E.2d 886, 889

---

4. Additionally, we note that one of the primary purposes of TPR is to immediately free the child for adoption. S.C.Code Ann. § 20-7-1560 (Supp.2007). This is especially true in cases where a child is faced with abuse and neglect. Following their engagement in May 2005, Mother and fiancé planned to be married in October of 2006. This date was cancelled. At oral argument, there was no evidence of record that the couple had subsequently married or set a new date. Again, we consider this only for purposes of whether there exists some beneficial interest to Child to be part of some other stable family relationship.

(1993) (finding the court need not address remaining issue when resolution of prior issue is dispositive).

Father also argues the family court erred by ordering him to pay GAL fees of $1,635.50 and his own attorney's fees. We disagree.

Father fails to support his argument with authority; therefore, the argument is conclusory and is abandoned on appeal. *See* Rule 208(b)(1)(D), SCACR. Notwithstanding, we find the family court did not abuse its discretion and affirm the family court's order regarding GAL and attorney's fees.

## CONCLUSION

We find that termination of Father's parental rights is premature at this juncture and is, therefore, not in Child's best interest. Accordingly, we remand this case to the family court to issue an order of visitation and to establish Father's duty of support. Additionally, we find the family court did not abuse its discretion in ordering Father to pay his own attorney's and GAL fees. For the foregoing reasons, the order of the family court is

**REVERSED AND REMANDED.**

HEARN, C.J., and CURETON, A.J., concur.