THIS
 OPINION HAS NO PRECEDENTIAL VALUE.  IT SHOULD NOT BE CITED OR RELIED ON AS
 PRECEDENT IN ANY PROCEEDING EXCEPT AS PROVIDED BY RULE 239(d)(2), SCACR.
THE STATE OF SOUTH CAROLINA
In The Court of Appeals

 
 
 
 Bob W.
 Young, Appellant,
 v.
 Carol
 Jennings Young, 
 SCDSS,
 Anthony 
 Roper,
 Pamela Durham, 
 and
 Phyllis M. Roper,
 Of Whom:
 Carol
 Jennings Young is, Respondent.
 
 
 

Appeal From Pickens County
Timothy L. Brown, Family Court Judge
Unpublished Opinion No. 2009-UP-161
Heard February 19, 2009  Filed April 1, 2009
AFFIRMED

 
 
 
 David A. Wilson, of Greenville, for Appellant.
 R. Scott
 Dover, of Pickens, for Respondent.
 
 
 

PER
 CURIAM: In this domestic matter, Husband asserts the family court abused
 its discretion in (1) approving and adopting the settlement agreement, (2)
 awarding an equal allocation of marital property, and (3) awarding fractional
 interests in the parties' Florida property.  We affirm.
FACTS/PROCEDURAL
 HISTORY
Bob W. Young (Husband) and
 Carol Jennings Young (Wife) were married on November 9, 1974.  The parties were
 married for thirty years and have no children.  
Husband and Wife separated
 on or about May 4, 2004.  Husband filed a complaint on July 15, 2004, and an
 amended complaint on August 6, 2004, seeking separate support and maintenance,
 equitable division, attorney's fees, and other relief.  On August 31, 2004,
 Wife filed an answer and counterclaim seeking a divorce, equitable division,
 attorney's fees, and other relief. 
A final hearing was held
 before the Honorable Timothy L. Brown on April 10, 2006.  At the call of the
 case, Husband made a motion to amend his pleadings to include one year of
 continuous separation as an alternative ground for divorce as well as a request
 for attorney's fees.  Counsel for Husband then placed into the record a
 partial agreement of the parties as to all issues with the exception of the
 percentages of the distribution of the marital estate, attorney's fees, and
 divorce.  Among the issues stipulated in the partial agreement was a waiver of
 alimony.  Counsel for Husband also noted that the parties agreed Husband would
 remain in the marital home but that the home would be placed for sale at an
 agreed upon price.  Thereafter, Husband's counsel stipulated as to the valuations
 of various personal items, bank accounts, and retirement accounts.  Husband's counsel
 also indicated the parties agreed Wife would share 25% interest in any earnings
 relative to Husband's corporation, Vortex, Inc.  
Husband's counsel further
 informed the court that Husband and Wife agreed their Florida property, which
 consists of a commercial building and billboard in Miami, FL, would not be sold
 but would continue to be owned jointly by the parties, and that the proceeds
 and liabilities would be divided subject to the percentage determined by the
 court.  Husband's counsel stated that the Florida property had severe
 maintenance issues and liabilities but that it was generating a total of
 $4,900.00 per month in income.  Later during the hearing, counsel for both
 parties reconfirmed the agreement that the Florida property would not be sold
 but would continue to be owned jointly by the parties.  Husband's counsel
 reasoned that this situation was favorable because the sale of the property may
 trigger an environmental issue rendering the property worthless. 
Following these
 stipulations, the court noted that the equitable apportionment issues were not
 fully resolved but that it would factor in the stated stipulations to the full
 agreement.  However, the court stated that it would make no commitment to
 accept the agreement; the court further indicated that testimony must be
 offered as to whether the agreement was fair and as to whether it was entered
 into freely, knowingly, and voluntarily.  After the court's remarks, Husband's
 counsel stated that he was prepared to stipulate that neither party was under
 the influence of alcohol or drugs, and that the agreement was arrived at freely
 and voluntarily without any coercion. 
Thereafter, testimony
 from Husband and Wife was taken.  Both parties assented that the agreement as
 stipulated by counsel was entered into freely, knowingly, and voluntarily.  Husband
 testified that his net worth at the time of the marriage was $800,000.00 to
 $1,000,000.00 and that his net worth at the time of the hearing was
 approximately $238,286.00.  Wife testified to her role as homemaker and her
 direct contributions to Husband's business, such as attending seminars and
 arranging social functions.  Wife also testified that she was directly involved
 in the Husband's real estate development in North Carolina, for which she
 contributed her skills as a licensed interior decorator in addition to
 overseeing all the day to day workings of the development.  
By final order and
 divorce decree dated May 23, 2006, the court granted Husband a divorce on the
 ground of one year of continuous separation.  In apportioning the marital
 estate, the court approved the agreement of the parties and divided the marital
 assets evenly with the exception of Husband's ownership interest in Vortex,
 Inc., which was divided 75/25 in favor of Husband.  As to the Florida property,
 the court ordered the parties to retain joint ownership of the property and to
 maintain a joint account for the rental proceeds.  The order further provided
 that Husband would assume primary responsibility for the joint account and for
 providing an accounting of all funds received and all expenses authorized to be
 paid by him in association with the maintenance and upkeep of the property. 
 Any funds remaining in the joint account after the payment of expenses would
 then be divided evenly between the parties.  The court also ordered $5,000.00
 in attorney's fees to be paid from the rental income from the Florida property to
 each party's attorney.  
Husband timely filed a
 motion to alter or amend, which was granted in part as to the allocation of
 marital debts and several valuation errors.  The court also reduced Wife's
 award of attorney's fees by $1,000.00.  This appeal followed.
STANDARD
 OF REVIEW
In appeals from the
 family court, this court has the authority to find facts in accordance with its
 own view of the preponderance of the evidence. Ray v. Ray, 374 S.C. 79,
 83, 647 S.E.2d 237, 239 (2007).  Despite this broad scope of review, the
 appellate court is not required to disregard the findings of the family court
 judge, who saw and heard the witnesses, and was in a better position to
 evaluate their credibility and assign comparative weight to their testimony.  Wooten
 v. Wooten, 364 S.C. 532, 540, 615 S.E.2d 98, 102 (2005).  
LAW/ANALYSIS
Husband first asserts the
 family court erred in adopting the settlement agreement.  Specifically, Husband
 asserts the agreement contains vague, ambiguous, and indefinite terms and is
 not procedurally or substantively reasonable.  We disagree.
Rule 43(k), SCRCP,
 provides that "[n]o agreement . . . in an action shall be binding unless
 reduced to the form of a consent order or written stipulation signed by counsel
 and entered in the record, or unless made in open court and noted upon the
 record." Rule 43(k), SCRCP.  To comply with the requirements of Rule
 43(k), the order or written stipulation must set forth the terms of the
 settlement.  Galloway v. Regis Corp., 325 S.C. 541, 545, 481 S.E.2d 714,
 715-16 (Ct. App. 1997).  However, such an agreement is still subject to review
 by the family court to determine its fairness.  Jackson v. Jackson, 279
 S.C. 618, 620, 310 S.E.2d 827, 828 (Ct. App. 1983).
Agreements regarding
 alimony, child support, or property issues must be presented to the family
 court for approval.  McKinney v. McKinney, 274 S.C. 95, 97, 261 S.E.2d
 526, 527 (1980) (holding that a marital agreement, even though plain and
 unambiguous, is nevertheless subject to the duty of the family court judge to
 rule upon its fairness).  As such, "[w]hen approving a settlement
 agreement, [the family court] must, first, determine if assent to the agreement
 is voluntarily given, and, second, determine if the agreement is 'within the
 bounds of reasonableness from both a procedural and substantive
 perspective.'"  Blejski v. Blejski, 325 S.C. 491, 497-98, 480
 S.E.2d 462, 466 (Ct. App. 1997) (quoting Burnett v. Burnett, 290 S.C.
 28, 347 S.E.2d 908 (Ct. App. 1986)).  
In the instant case, we
 find the family court's approval of the agreement was appropriate.   At the commencement
 of the hearing, counsel entered into the record a partial agreement reached
 between the parties.  The partial agreement provided for, among other things,
 the sale of the marital home and joint ownership of their Florida property.  Specifically,
 with regard to the marital residence, Husband's counsel stipulated that Husband
 would have "four months to shop the house sale" and "all the
 terms and price of sale will be subject to the approval of both."  As to
 the Florida property, Husband's counsel stated that the parties agreed the
 property would not be sold but would "continue to be owned by the
 parties."  Wife's counsel further confirmed that "[w]e did agree to
 that, that it would remain jointly held by the parties in the percentages
 determined by Your Honor for [the] future, forever, and that the profits or any
 profits received from there will be divided in the same manner."  These
 terms of the partial agreement reached by the parties were entered into the
 court's record and acknowledged in open court prior to the parties' testimony.  
After the partial agreement
 was placed into the record, both parties were questioned as to the fairness of
 the agreement and whether it was entered into freely and voluntarily.  Husband and
 Wife testified that they freely and voluntarily entered into the agreement.  Husband
 further testified that the agreement was fair and reasonable and that it was
 his desire that the agreement, subject to percentage, be approved by the
 court.  While Husband asserts that he never assented to the terms of the
 agreement concerning the marital residence and the Florida property, the record
 reveals that the disputed terms are the precise terms stipulated by counsel
 that Husband testified were fair and reasonable.   Accordingly, based on the
 evidence in the record, we find the agreement was freely and voluntarily
 entered into by Husband and Wife.[1]  
However, our analysis
 does not conclude here as the agreement must be approved by the family court
 before it can be adopted and incorporated into the decree.  See Moseley
 v. Mosier, 279 S.C. 348, 353, 306 S.E.2d 624, 627 (1983) ("In all
 decrees entered after this decision, the parties may contract concerning their
 property settlement and alimony, but the submitted agreement must be approved
 by the family court."); Drawdy v. Drawdy, 275 S.C. 76, 77, 268
 S.E.2d 30, 30-31 (1980) (stating approval of an agreement requires
 consideration beyond whether the agreement was validly executed).  This process
 involves two distinct questions: whether the parties freely and voluntarily
 entered into the agreement; and whether the agreement is reasonable.  Blejski,
 325 S.C. at 497-98, 480 S.E.2d at 466.  In the instant case, the court
 questioned both parties regarding their agreement.  Testimony from Husband and
 Wife revealed no indication that either party was under any duress, coercion,
 or force at the time they entered into the agreement.  The court further found
 that the parties negotiated their agreement with the benefit and advice of
 independent and experienced counsel.  As to reasonableness, the court took into
 consideration the parties' economic circumstances, their contributions, the
 duration of the marriage, and the absence of marital fault in determining that
 the substance of the agreement was fair.  Our review of the record supports the
 family court's findings.  
Therefore, based on the
 evidence in the record, we find no error in the family court's decision to
 approve and enforce the agreement after determining that the agreement was entered
 into freely and voluntarily and that the agreement was fair and reasonable. 
 Moreover, Husband testified that he agreed to be bound by the agreement; thus,
 he cannot now complain that the agreement is unreasonable.[2]  See Harrison v. Bevilacqua, 354 S.C. 129, 139-40, 580 S.E.2d 109,
 114-15 (2003) (stating petitioner cannot now complain the trial court erred
 when it took his own suggestion); Doe v. Roe, 379 S.C. 291, 297, 665
 S.E.2d 182, 185 (Ct. App. 2008) (stating that appellant cannot, on appeal,
 complain of an issue to which he consented).  
Husband next asserts the
 family court erred in apportioning the marital estate equally.  We disagree.
The apportionment of
 marital property is within the family court's sound discretion and will not be
 disturbed on appeal absent an abuse of that discretion.  In making an
 apportionment of a marital estate, the court must consider and give weight in
 such proportion as it finds appropriate to fifteen factors enumerated in Section
 20-7-472 of the South Carolina Code.  S.C. Code Ann. § 20-7-472 (Supp. 2007).[3] 
 Upon review of the family court's equitable apportionment, this court looks to
 the overall fairness of the apportionment and if the result is equitable, taken
 as a whole, we may accept that apportionment even if this court might have
 weighed specific factors differently than the family court.  Simpson v.
 Simpson, 377 S.C. 527, 533, 660 S.E.2d 278, 282 (Ct. App. 2008).
The philosophy behind
 equitable apportionment is articulated in Walker v. Walker, 295 S.C.
 286, 368 S.E.2d 89 (Ct. App. 1988), as based on a recognition that marriage is,
 among other things, an economic partnership. Id. at 288, 368 S.E.2d at
 90.  As such, upon dissolution of the marriage, property accumulated during the
 marriage should be divided and distributed in a manner reflective of each
 spouse's contribution to its acquisition, regardless of which spouse owns legal
 title.  Id.   The family court has wide discretion in determining the
 contributions made by each spouse to the marital property.  Ball v. Ball,
 314 S.C. 445, 448, 445 S.E.2d 449, 451 (1994). 
Here, the record reflects
 the court properly considered the appropriate factors of § 20-7-472 in awarding
 each party a one-half interest in any marital property owned by the parties.   Specifically,
 the court considered the duration of the marriage, the parties' ages, the
 parties' incomes, the valuations of the properties, and the tax consequences. 
 Additionally, as to the contributions of each party, the court determined that,
 when considered as a whole, the contributions of each party were equal in
 value.  In so finding, the court noted that Husband provided little testimony
 as to his direct contributions but that Wife provided abundant testimony as to
 both her direct contributions associated with Husband's business and her
 indirect contributions as a homemaker.   After weighing these factors and in
 light of the agreement between the parties, the court determined that the
 marital estate should be apportioned fifty percent to each spouse.  While there
 is no presumption in favor of a 50/50 division in marital property, we note the
 court's finding is consistent with this court's routine approval of an equal
 division as an appropriate starting point in marriages of long duration.  See Doe v. Doe, 370 S.C. 206, 214, 634 S.E.2d 51, 56 (Ct. App. 2006) (stating
 equal division is an appropriate starting point in dividing an estate of a
 long-term marriage).  Given the statutory factors and in view of the duration
 of the marriage, the value of the marital property, and the incomes of the
 parties, we find the court's distribution is fair and equitable.  Accordingly,
 the disposition of the marital assets on an equal basis was not an abuse of
 discretion. 
Lastly, Husband asserts
 the family court erred in awarding a fractional ownership in the Florida
 property.  We disagree.  
The objective in dividing
 marital property is to sever all joint interests in the property as completely
 as possible.  Johnson v. Johnson, 285 S.C. 308, 311, 329 S.E.2d 443, 445
 (Ct. App. 1985).  Thus, absent compelling reasons, joint ownership should be
 avoided.  Id. 
In the instant case, the
 parties presented compelling reasons for maintaining joint ownership.  In
 particular, the record indicates that the property generates a substantial
 income and that a court ordered sale of the property may trigger existing
 environmental issues rendering the property worthless.  Thus, although the
 court should avoid awarding fractional interests in marital property, we find
 compelling reasons exist for retaining the parties' joint ownership in this
 property.  Furthermore, the parties specifically provided for joint ownership
 in their partial agreement which was properly approved and adopted by the
 family court.  Moreover, testimony from Husband after the agreement was placed
 on the record further confirmed his desire to retain joint ownership when, in
 response to the question concerning whether he and Wife "agreed to
 maintain jointly [the Florida] property," Husband replied, "You're
 right."  Accordingly, the court's award of joint ownership in the Florida
 property was not an abuse of discretion.[4]   
CONCLUSION
For the foregoing reasons,
 the order of the family court is
AFFIRMED.
WILLIAMS, PIEPER, and
 GEATHERS, JJ., concur.  

[1]Additionally,
 as to the Florida property, Husband asserts he was not questioned regarding a
 modification to the parties' agreement.  The alleged modification consists of
 the following statement by Husband's counsel: "We agree that the property
 is not to be sold but would continue to be owned by the parties as . . . joint
 tenants in common of whatever percentage Your Honor assigns to it because we
 don't want to trigger an environmental problem because it may not be worth
 anything."  Because this statement by counsel merely reiterated the terms
 that counsel previously noted on the record at the beginning of the hearing and
 to which Husband voiced his assent, we find this argument meritless.  
[2] In view of the assent to the agreement by Husband's counsel in open court, we
 note the long standing rule that a client is bound by the actions of his
 attorney.  See Shelton v. Bressant, 312 S.C. 183, 184, 439 S.E.2d
 833, 834 (1993) ("Acts of an attorney are directly attributable to and
 binding upon a client."); Smith v. Pearson, 210 S.C. 524, 530, 43
 S.E.2d 479, 481 (1947) (finding appellants bound by statement made by counsel
 at the outset of hearing); Widdicombe v. Tucker-Cales, 366 S.C. 75, 90
 n.5, 620 S.E.2d 333, 341 n.5 (Ct. App. 2005) ("[A] party is generally
 bound by stipulations made by their counsel.").  "The parties to a
 suit are bound by admissions, made by their attorneys of record, in open court,
 or elsewhere, touching matters looking to the progress of the trial." Hall
 v. Benefit Ass'n of Ry. Employees, 164 S.C. 80, 83, 161 S.E. 867, 868
 (1932).  As such, Husband's assertion that the agreement stipulated by counsel
 was not settled according to his terms does not entitle him to a new trial de
 novo on these issues, especially where, as here, Husband assented to the terms
 at trial.  See Shelton, 312 S.C. at 185, 439 S.E.2d at 834
 ("When a litigant voluntarily accepts an offer of settlement, either directly or indirectly through the duly authorized actions of his attorney, the
 integrity of the settlement cannot be attacked on the basis of inadequate
 representation by the litigant's attorney.").  
[3] Pursuant to Act No. 361, 2008 S.C. Acts 3623, Section
 20-7-472 has been transferred to Section 20-3-620.  See Act No. 361,
 2008 S.C. Acts 3623 (stating "the transfer and reorganization of the code
 provisions in this act are technical . . . and are not intended to be
 substantive").  Because Article 6 has not yet been bound, all citations to
 the statute refer to Chapter 7.
[4] Despite Husband's contention that the order fails to account for his costs
 associated with the upkeep of the property, we find the family court's order
 clearly enunciates that the costs and expenses of maintenance and upkeep of the
 Florida property are to be deducted from the net proceeds; therefore, both
 parties share equally in these costs.