# THE STATE OF SOUTH CAROLINA
## In The Court of Appeals

Robert Dale Kosciusko, Appellant,

v.

Alice Witherspoon Wilson Parham, Respondent.

In Re:

Alice Witherspoon Wilson Parham n/k/a Alice Witherspoon Parham Casey, Respondent,

v.

Robert Dale Kosciusko, Appellant.

Appellate Case No. 2017-000016

———————————

Appeal From Richland County
Robert S. Armstrong, Family Court Judge

———————————

Opinion No. 5690
Heard October 14, 2019 – Filed November 6, 2019

———————————

**AFFIRMED**

———————————

John O. McDougall, of McDougall, Self, Currence & McLeod, LLP, of Columbia, and Katherine Carruth Goode, of Winnsboro, both for Appellant.

Whitney Boykin Harrison, of McGowan Hood & Felder, LLC, of Columbia, for Respondent.

**GEATHERS, J.:**  In this family court action, Robert Kosciusko ("Father") sought a finding of contempt against Alice Witherspoon Parham Casey ("Mother") for alleged violations of an order confirming an arbitration award concerning child custody and visitation.  Father argues the family court erred in dismissing his contempt action by: 1) finding that it lacked subject-matter jurisdiction to enforce the family court's prior order confirming the arbitration award; 2) failing to find that Mother was estopped from challenging the award and waived any objection to the enforceability of the order confirming the award; 3) refusing to enforce the unappealed order of a different family court judge confirming the arbitration award; and 4) refusing to enforce the order confirming the arbitration award when South Carolina's public policy favors alternative dispute resolution and the widespread practice in the state includes voluntary arbitration of children's issues.  As an additional sustaining ground, Mother argues Father failed to meet his burden of proof in the underlying rule to show cause motion.  We affirm.

## FACTS

Mother and Father were married on October 6, 2001.[1]  During their marriage, the parties had two children.  As a result of the breakdown of the marriage, Mother and Father separated and entered into a property settlement, support, and custody agreement that established "true joint custody" of the children; and, on July 15, 2011, the family court entered an order approving the agreement.  The agreement was later modified by an addendum, which was approved by a supplemental order of the family court on December 19, 2011.  The parties were divorced on July 27, 2012.  In the divorce order, the family court determined that all of the matters within its jurisdiction, including child custody and visitation, had been resolved by the final order approving the parties' settlement agreement.

Despite the parties' settlement agreement, child custody and visitation became contentious issues between Mother, Father, and Father's new wife, Deena Dill.  On July 7, 2015, and August 20, 2015, Mother and Father attempted to mediate issues involving child custody and visitation, but both attempts were unsuccessful.  After the failed mediations, the parties agreed to submit the issues of "right of first refusal, holidays, visitation schedule, vacations, and transfers/transportation" to binding arbitration and obtained a consent order incorporating the agreement.  However, the parties did not seek to alter the original joint-custody award established in the

---

[1] Mother is an attorney and a member of the South Carolina Bar who is in good standing.  Father is an emergency room physician.

settlement agreement. The consent order was issued by the Honorable Monet S. Pincus on October 14, 2015.

Under the terms of the consent order, the parties agreed to present the arbitration award to the family court for confirmation pursuant to section 15-48-120 of the South Carolina Code (2005),[2] part of the Uniform Arbitration Act, S.C. Code Ann. § 15-48-10 to -240 (2005). The order provided that "[t]he parties further agree[d] that such confirmation shall not require a [h]earing, but may be accomplished based on written application of either party." Additionally, the order provided that the family court would retain continuing jurisdiction to modify the arbitration award or any order of the court.

The parties proceeded to binding arbitration, and the arbitrator issued an award on November 23, 2015. Two provisions of the award are relevant to Father's contempt action. First, pursuant to the parties' settlement agreement, the arbitrator determined custody would follow a "week on/week off" schedule. However, the arbitrator clarified that "[t]he week period shall begin on Monday morning (at school drop-off or if there is no school at 10:00 a.m.)." Second, the arbitrator determined "[t]he parent having the children in their custody at the conclusion of their time when the children are to be returned to school shall have the obligation to timely return the child/children to school at the conclusion of their time with the child/children if school is in session." On November 30, 2015, Judge Pincus issued an order confirming the arbitration award without a hearing. Neither party appealed the order confirming the award.

On July 5, 2016, Father, acting *pro se*, filed a complaint before the Honorable Robert S. Armstrong seeking to hold Mother in contempt for alleged violations of the arbitration award. In his complaint, Father asserted Mother was in violation of the provision requiring that the children be timely returned to school because the children had accumulated five tardies and two absences over the course of a school year. A rule to show cause was issued by the family court on July 12, 2016. On September 21, 2016, Mother served Father with her return, in which she argued the arbitration award was invalid and could not be enforced because it constituted an improper delegation of the family court's authority. Mother also asserted Father's contempt action was frivolous and part of a pattern of uncooperative and harassing

[2] Section 15-48-120 states, "Upon application of a party, the court shall confirm an award, unless within the time limits hereinafter imposed grounds are urged for vacating or modifying or correcting the award, in which case the court shall proceed as provided in §§ 15-48-130 and 15-48-140."

behavior directed at Mother by Father and Ms. Dill. Mother filed her return with the court prior to the hearing on September 22, 2016.

At the outset of the hearing, Mother moved to dismiss the contempt action, arguing there was not a valid order to enforce. In considering the validity of the order confirming the arbitration award, the family court noted the law regarding arbitration of children's issues is not clear but indicated that case law "has been consistent that the court cannot [delegate] its authority on matters concerning children and custody." The family court ultimately found the order to be unenforceable because no statute provides the family court with jurisdiction to submit issues of child custody and visitation to binding arbitration and case law precludes the family court from delegating such authority to a third party. On October 6, 2016, the family court entered an order finding there was no valid order to enforce, dismissing the contempt action with prejudice, and discharging the rule to show cause.

On October 17, 2016, Father filed a motion to reconsider, alter, or amend the family court's order. Mother filed a return to the motion on October 28, 2016, and Father filed a reply. On October 31, 2016, the family court conducted a telephone conference with the parties regarding the motion to reconsider and entered an order denying the motion on December 5, 2016. This appeal followed.

## ISSUES ON APPEAL

1. Did the family court err in finding that it lacked subject-matter jurisdiction to enforce the family court's prior order confirming the arbitration award?

2. Did the family court err in failing to find that Mother was estopped from challenging the award and waived any objection to the enforceability of the order confirming the award?

3. Did the family court err in refusing to enforce the unappealed order of a different family court judge confirming the arbitration award?

4. Did the family court err in refusing to enforce the order confirming the arbitration award when South Carolina's public policy favors alternative dispute resolution?

5. Did Father meet his burden of proof in the underlying rule to show cause motion?

## STANDARD OF REVIEW

"The family court is a court of equity." *Lewis v. Lewis*, 392 S.C. 381, 386, 709 S.E.2d 650, 652 (2011). "Our standard of review, therefore, is *de novo*." *Id.*; *see also Stoney v. Stoney*, 422 S.C. 593, 596, 813 S.E.2d 486, 487 (2018) ("[W]e reiterate that the proper standard of review in family court matters is de novo, rather than an abuse of discretion . . . ."). Accordingly, "[o]n appeal from the family court, the appellate court has jurisdiction to find facts in accordance with its own view of the preponderance of the evidence." *S.C. Dep't of Soc. Servs. v. Polite*, 391 S.C. 275, 279, 705 S.E.2d 78, 80 (Ct. App. 2011). However, "*de novo* review neither relieves an appellant of demonstrating error nor requires [an appellate court] to ignore the findings of the family court." *Lewis*, 392 S.C. at 389, 709 S.E.2d at 654. Rather, an appellate court "will affirm the decision of the family court in an equity case unless its decision is controlled by some error of law or the appellant satisfies the burden of showing the preponderance of the evidence actually supports contrary factual findings by th[e appellate] court." *Holmes v. Holmes*, 399 S.C. 499, 504, 732 S.E.2d 213, 216 (Ct. App. 2012).

## LAW/ANALYSIS

### I.   Subject-matter jurisdiction and binding arbitration of children's issues

Father argues the family court erred in finding that it lacked subject-matter jurisdiction to enforce the order confirming the arbitration award because sections 15-48-10 and 63-3-530(A)(39) of the South Carolina Code authorize the arbitration of domestic matters without providing an exception for issues involving children. Mother argues the family court properly determined it did not have subject-matter jurisdiction to enforce the order because binding arbitration of children's issues is precluded by court rules and laws of the state, rendering the order void *ab initio*. We agree with Mother.

"Contempt results from the willful disobedience of an order of the court." *Miller v. Miller*, 375 S.C. 443, 454, 652 S.E.2d 754, 759 (Ct. App. 2007) (quoting *Bigham v. Bigham*, 264 S.C. 101, 104, 212 S.E.2d 594, 596 (1975)). However, it is well settled that a party may not be held in contempt for violation of a void order. *See Arnal v. Fraser*, 371 S.C. 512, 522, 641 S.E.2d 419, 424 (2007) ("[A party] cannot be held in contempt for violating an order [that] was void *ab initio* for a lack of jurisdiction."); *State ex rel. McLeod v. Holcomb*, 245 S.C. 63, 66, 138 S.E.2d 707, 708 (1964) (noting that it is a "settled principle that disobedience of a void order or one issued without jurisdiction is not contempt"); *Long v. McMillan*, 226 S.C. 598, 609, 86 S.E.2d 477, 482 (1955) ("[D]isobedience of a void Order, Judgment, or

Decree, or one issued without jurisdiction of subject matter and parties litigant, is not 'contempt[.]'"). "A void judgment is one that, from its inception, is a complete nullity and is without legal effect . . . ." *Katzburg v. Katzburg*, 410 S.C. 184, 187, 764 S.E.2d 3, 5 (Ct. App. 2014) (quoting *Gainey v. Gainey*, 382 S.C. 414, 424, 675 S.E.2d 792, 797 (Ct. App. 2009)). "A judgment of a court without subject[-]matter jurisdiction is void . . . ." *Id*. (quoting *Gainey*, 382 S.C. at 424, 675 S.E.2d at 797).

"Subject[-]matter jurisdiction is the power of a court to hear and determine cases of the general class to which the proceedings in question belong." *S.C. Dep't of Soc. Servs. v. Meek*, 352 S.C. 523, 530, 575 S.E.2d 846, 849 (Ct. App. 2002) (quoting *Pierce v. State*, 338 S.C. 139, 150, 526 S.E.2d 222, 227 (2000)). In other words, "subject[-]matter jurisdiction refers to a court's constitutional or statutory power to adjudicate a case." *Johnson v. S.C. Dep't of Prob., Parole, & Pardon Servs.*, 372 S.C. 279, 284, 641 S.E.2d 895, 897 (2007). As such, "[t]he jurisdiction of a court is determined by the sovereign creating it, and thus the question of the specific court in which an action is to be brought is determined in the first instance by reference to local law." *Katzburg*, 410 S.C. at 187, 764 S.E.2d at 4 (quoting *Peterson v. Peterson*, 333 S.C. 538, 548, 510 S.E.2d 426, 431 (Ct. App. 1998)). "The family court is a statutory court created by the legislature and, therefore, is of limited jurisdiction." *State v. Graham*, 340 S.C. 352, 355, 532 S.E.2d 262, 263 (2000); *see also* S.C. Const. art V, § 12 ("Jurisdiction . . . in matters appertaining to minors . . . shall be vested as the General Assembly may provide, consistent with the provisions of Section 1 of this article."). Thus, the family court's "jurisdiction is limited to that expressly or by necessary implication conferred by statute." *Graham*, 340 S.C. at 355, 532 S.E.2d at 263. Accordingly, our supreme court has consistently provided that "[t]he jurisdictional authority of the [family] court is set forth in the Children's Code.[3]" *Id*.; *Riggs v. Riggs*, 353 S.C. 230, 236 n.3, 578 S.E.2d 3, 6 n.3 (2003) ("[The precursor to section 63-3-530] determines the family court's subject[-]matter jurisdiction . . . ."), *cited with approval in In re Shaquille O'Neal B.*, 385 S.C. 243, 247, 684 S.E.2d 549, 552 (2009); *see also Theisen v. Theisen*, 394 S.C. 434, 441, 443 n.4, 716 S.E.2d 271, 274, 275 n.4 (2011) (distinguishing the family court's *subject-matter jurisdiction* to hear actions for separate support and maintenance, established in section 63-3-530(A)(2) of the Children's Code, from the family court's *authority* to award separate support and maintenance emanating from section 20-3-130(B)(5) (emphases added)).

---

[3] The Children's Code comprises sections 63-1-10 through 63-21-30. The family court's jurisdiction in domestic matters is controlled by S.C. Code Ann. § 63-3-530 (2010 & Supp. 2019).

There are two statutes relevant to the family court's jurisdiction to allow parties to voluntarily engage in binding arbitration.  First, pursuant to section 15-48-10(a), part of the Uniform Arbitration Act,

> A written agreement to submit any existing controversy to arbitration or a provision in a written contract to submit to arbitration any controversy thereafter arising between the parties is valid, enforceable and irrevocable, save upon such grounds as exist at law or in equity for the revocation of any contract.

However, section 15-48-10(b) excepts from the Act

> (1) Any agreement or provision to arbitrate in which it is stipulated that this chapter shall not apply or to any arbitration or award thereunder;

> (2) Arbitration agreements between employers and employees or between their respective representatives unless the agreement provides that this chapter shall apply; provided, however, that . . . workmen's compensation claims, unemployment compensation claims and collective bargaining disputes shall [not] be subject to the provisions of this chapter . . . .

> (3) A pre-agreement entered into when the relationship of the contracting parties is such that of lawyer-client or doctor-patient and the term "doctor" shall include all those persons licensed to practice medicine . . . .

> (4) Any claim arising out of personal injury, based on contract or tort, or to any insured or beneficiary under any insurance policy or annuity contract.

Second, section 63-3-530(A)(39) of the Children's Code provides

> The family court has exclusive jurisdiction: to require the parties to engage in court-mandated mediation pursuant to Family Court Mediation Rules or to issue consent orders authorizing parties to engage in any form of alternate dispute resolution [that] does not violate the rules of the court or the laws of South Carolina . . . .

Father argues neither statute precludes the family court from issuing a consent order authorizing parties to engage in binding arbitration regarding children's issues. Moreover, Father argues that, between the two statutes, section 15-48-10 is controlling, and the statute allows for any existing controversy to be submitted to binding arbitration without exception for children's issues. Mother argues section 63-3-530(A)(39) controls and, thus, the family court's jurisdiction to issue consent orders regarding alternate dispute resolution (ADR) is limited to forms of ADR that do not violate court rules or the laws of the state. We agree with Mother.

We find two rationales support the notion that section 63-3-530(A)(39) is controlling in regard to the family court's jurisdiction to allow parties to voluntarily engage in binding arbitration. First, the act codifying section 63-3-530(A)(39) was passed after the enactment of the Uniform Arbitration Act. The Uniform Arbitration Act was enacted in 1978. Act No. 492, 1978 S.C. Acts 1478–1486. In 1992, the precursor to section 63-3-530 was amended to provide the family court with jurisdiction to issue consent orders submitting disputes to ADR. Act. No. 441, 1992 S.C. Acts 2326. This section was recodified into the Children's Code in 2008. Act No. 361, 2008 S.C. Acts 3637. In enacting section 63-3-530(A)(39), the legislature did not indicate that the Uniform Arbitration Act controlled. Rather, the statutory provision explicitly provides that the family court's jurisdiction is limited to issuing consent orders to engage in forms of ADR that do not violate court rules or the laws of South Carolina. Therefore, we find the legislature intended section 63-3-530(A)(39) to control the family court's jurisdiction regarding ADR. *See Berkebile v. Outen*, 311 S.C. 50, 53, 426 S.E.2d 760, 762 (1993) ("A basic presumption exists that the legislature has knowledge of previous legislation when later statutes are passed on a related subject.").

As to the second rationale, section 63-3-530(A)(39) is more specific than section 15-48-10. Section 15-48-10 is a general arbitration statute that establishes the types of controversies that may be submitted to arbitration. The statute does not have any language regarding the jurisdiction of the family court. On the other hand, section 63-3-530(A)(39) specifically establishes the family court's jurisdiction regarding ADR and the limitations on such jurisdiction. Therefore, section 63-3-530(A)(39) is controlling. *See Capco of Summerville, Inc. v. J.H. Gayle Const. Co.*, 368 S.C. 137, 142, 628 S.E.2d 38, 41 (2006) ("Whe[n] there is one statute addressing an issue in general terms and another statute dealing with the identical issue in a more specific and definite manner, the more specific statute will be considered an exception to, or a qualifier of, the general statute and given such effect."); *see also Graham*, 340 S.C. at 355, 532 S.E.2d at 263 ("The jurisdictional authority of the [family] court is set forth in the Children's Code.").

Thus, we find the family court's jurisdiction to authorize parties to engage in ADR is limited by court rules and the laws of the state as provided in section 63-3-530(A)(39) ("The family court has exclusive jurisdiction: to . . . issue consent orders authorizing parties to engage in any form of alternate dispute resolution [that] does not violate the rules of the court or the laws of South Carolina . . . ."). Therefore, in determining whether the family court had subject-matter jurisdiction to sanction or approve binding arbitration of issues involving custody and visitation, we must determine whether binding arbitration of such issues violates court rules or established law. We will address each question in turn.

### a. Court rules

Father argues the family court erred in finding it did not have subject-matter jurisdiction to enforce the order because no rule of court prohibits the submission of children's issues to binding arbitration. Specifically, Father argues 1) Rule 3(a), SCADR expressly authorizes parties to consent to voluntary, binding arbitration of any class of issue in domestic relations cases; and 2) Rule 4(d)(5), SCADR does not expressly prohibit issues related to children from being arbitrated. Mother argues Rule 4(d)(5) authorizes the family court to submit only issues of property and alimony to binding arbitration. We agree with Mother.

"In interpreting the meaning of [procedural rules], the [c]ourt applies the same rules of construction used to interpret statutes." *Ex parte Wilson*, 367 S.C. 7, 15, 625 S.E.2d 205, 209 (2005). "If a rule's language is plain, unambiguous, and conveys a clear meaning, interpretation is unnecessary and the stated meaning should be enforced." *Id*. "Courts should consider not only the particular clause in which a word may be used, but the word and its meaning in conjunction with the purpose of the whole rule and the policy of the rule." *Id*. "In construing a rule, language in the rule must be read in a sense [that] harmonizes with its subject matter and accords with its general purpose." *Id*.

We disagree with Father's contention that Rule 3, SCADR and its exceptions apply exclusively to binding arbitration. The procedures for mediation and arbitration are controlled by the South Carolina Rules of Alternative Dispute Resolution.[4] *See* Rule 24, SCADR ("These rules shall apply to cases filed in . . . family court . . . ."). Rule 3 provides which actions are subject to ADR. Pursuant to Rule 3(a), SCADR,

---

[4] While the ADR rules have recently been updated, we refer to the version of the rules in place at the time the consent order was filed.

all contested issues in domestic relations actions filed in family court, except for cases set forth in Rule 3(b) or (c), are subject to court-ordered mediation under these rules unless the parties agree to conduct an arbitration. The parties may . . . mediate, arbitrate or submit to early neutral evaluation at any time.

Rule 3(b), SCADR provides nine types of cases, matters, and proceedings that are not subject to any form of ADR. Additionally, Rule 3(c), SCADR provides that any action not subject to ADR may be ordered to mediation by the chief administrative judge of the court. Therefore, Rule 3 generally pertains to mediation and arbitration, but does not expressly authorize the arbitration of children's issues.

Moreover, while Rule 3 generally provides which actions are subject to or exempt from ADR, Rule 4(d) specifically provides which "neutrals"[5] may be selected or appointed in family court litigation. Pursuant to Rule 4(d)(2), "[i]f issues are in dispute . . . the parties *must mediate those issues* prior to the scheduling of a hearing on the merits; provided, however, parties may submit the issues of *property and alimony* to binding arbitration in accordance with subparagraph (5)." (emphases added). Rule 4(d)(5) provides, "In lieu of mediation, the parties *may elect to submit issues of property and alimony to binding arbitration* in accordance with the Uniform Arbitration Act, S.C. Code § 15-48-10 et seq., *or submit all issues to early neutral evaluation[6] pursuant to these rules*."[7] (emphases added). Notably and counter to Rule 4(d)(2), which expressly permits the submission of property and alimony issues to binding arbitration, Rule 4(d)(1), SCADR provides "[i]f there are unresolved issues of *custody or visitation*, the court may . . . order an early mediation of those issues upon motion of a party or upon the court's own motion." (emphasis added).

---

[5] A "Neutral" is defined as "[a] mediator, arbitrator or evaluator." Rule 2(g), SCADR.

[6] "Early Neutral Evaluation" is "[a]n informal process in which a third-party evaluator provides a non-binding evaluation of the matters in controversy, assists the parties in identifying areas of agreement, offers case planning suggestions, and assists in settlement discussions." Rule 2(e), SCADR.

[7] We note the language in Rule 4(d)(5) regarding the submission of issues involving property and alimony to binding arbitration is consistent with the analysis in *Swentor v. Swentor*, 336 S.C. 472, 520 S.E.2d 330 (Ct. App. 1999), discussed further *infra*.

We do not agree that Rule 4(d)(5)'s silence regarding binding arbitration of children's issues is a permissive grant of authority for the family court to submit such issues to binding arbitration, as Father asserts. First, we note Rule 4(d)(2) provides that, if there are disputed issues in family court cases subject to ADR, the parties *must* mediate those issues prior to scheduling a hearing on the merits. Thus, Rule 4(d)(2) establishes a general requirement that such cases be mediated before proceeding to formal litigation. *See Collins v. Doe*, 352 S.C. 462, 470, 574 S.E.2d 739, 743 (2002) ("[U]se of words such as 'shall' or 'must' indicates the []intent to enact a mandatory requirement."). However, Rules 4(d)(2) and 4(d)(5) provide an exception to this requirement for issues of property and alimony by indicating that parties *may* submit such issues to binding arbitration *in lieu of mediation*. Accordingly, we find the use of the word may in this context is a grant of permission to engage in binding arbitration rather than mediation, which is limited to the two issues specifically referenced. *See Kennedy v. S.C. Ret. Sys.*, 345 S.C. 339, 352–53, 549 S.E.2d 243, 250 (2001) ("The use of the word 'may' signifies *permission* and generally means that the action spoken of is optional or discretionary unless it appears to require that it be given any other meaning in the present statute." (emphasis added)). Therefore, issues of alimony and property are the only issues which may be submitted to binding arbitration in lieu of mandatory mediation.

Second, we do not agree that Rule 4(d)(5)'s silence as to children's issues is an implicit grant of authority, as the rule drafters could have included such issues in their grant of authority had they intended such issues to be subject to binding arbitration. Notably, Rule 4(d)(1) specifically provides that unresolved issues of *custody or visitation* may be ordered to early mediation. Moreover, the second part of Rule 4(d)(5) provides that the parties may elect to submit *all issues* to early neutral evaluation. Conversely, Rule 4(d)(5) provides that issues of *property and alimony* may be submitted to binding arbitration. We believe had the rule drafters intended to subject children's issues to binding arbitration, they would have used the term "all issues" as they did in regard to early neutral evaluation in Rule 4(d)(5), or included specific language as they did in regard to early mediation in Rule 4(d)(1). Therefore, we find Rule 4(d)(5)'s silence regarding the submission of children's issues to binding arbitration is intended to preclude such issues from being submitted to binding arbitration. *See Riverwoods, LLC v. Cty. of Charleston*, 349 S.C. 378, 384, 563 S.E.2d 651, 655 (2002) ("The canon of construction '*expressio unius est exclusio alterius*' or '*inclusio unius est exclusio alterius*' holds that 'to express or include one thing implies the exclusion of another, or of the alternative.'" (quoting *Hodges v. Rainey*, 341 S.C. 79, 86, 533 S.E.2d 578, 582 (2000))).

Based on the foregoing, we find the submission of children's issues to binding arbitration is precluded by the South Carolina Rules of Alternative Dispute Resolution.

### b. State law

Father argues the family court erred in finding that binding arbitration of children's issues constitutes a delegation of authority to a third party regarding issues of child welfare, which is precluded by precedent. Rather, Father argues, the parties voluntarily agreed to submit their dispute to binding arbitration and the court properly exercised its authority in authorizing the arbitration. Mother argues the family court correctly determined that binding arbitration amounted to an improper delegation of the family court's authority. We agree with Mother.

We find the submission of children's issues to binding arbitration would be an improper delegation of the family court's authority and violative of South Carolina law because the procedures mandated by the Uniform Arbitration Act would prevent the family court from determining whether an award is in the child's best interest. Under the Uniform Arbitration Act, courts have limited powers when presented with an arbitration award. Pursuant to section 15-48-120, "Upon application of a party, the court *shall* confirm an [arbitration] award, unless . . . grounds are urged for vacating or modifying or correcting the award, in which case the court *shall proceed as provided in §§ 15-48-130 and 15-48-140*." (emphases added). Section 15-48-130[8] exclusively provides five grounds regarding the fairness of the arbitration proceedings under which a binding arbitration award may be vacated. Additionally, under section 15-48-140,[9] a court may modify or correct miscalculations, mistakes, awards on matters not submitted to arbitration, or the form of an award, so long as the modification does not affect the underlying merits of the award. However, neither statute provides any merit-based grounds, such as a child's best interest, for modifying or vacating an award.

In *Swentor v. Swentor*, this court explained the limited powers of the family court when presented with an arbitration award regarding alimony and equitable apportionment of property obtained pursuant to the Uniform Arbitration Act. 336 S.C. at 481–83, 520 S.E.2d at 335–36. The court noted, "the general rule is that agreements regarding alimony, child support, or property issues must be presented to the family court for approval." *Id*. at 481, 520 S.E.2d at 335. However, the court concluded that the family court's "traditional power to approve property and

---

[8] S.C. Code Ann. § 15-48-130 (2005).
[9] S.C. Code Ann. § 15-48-140 (2005).

separation agreements, which includes the power to consider the substantive fairness of the agreement, simply does not extend to arbitration agreements and awards presented to the family court[,]" because "[a]n inquiry into the substantive fairness of an agreement . . . *would be inconsistent* with the Arbitration Act[]" and "would *severely undermine the finality of arbitration agreements*." *Id*. at 482–83, 520 S.E.2d at 336 (emphases added). The court further explained,

> Given [the court's] determination that the Arbitration Act and the family court's general power to review and approve agreements in domestic relations cases are fundamentally incompatible, [the court] conclude[s] that the Arbitration Act prohibits the family court from exercising this power when presented with arbitration agreements. This [c]ourt must presume that, at the time the Arbitration Act was enacted, the legislature was aware of the family court's power to review and approve property and separation agreements. If the legislature had intended family courts to exercise this power over arbitration agreements and awards, it would have either exempted domestic relations matters from the scope of the Act, or it would have expressly provided that arbitration awards involving domestic relations matters could be set aside if the family court determined that the award was unfair. Instead, we conclude that the purpose and framework of the Arbitration Act, as well as the limited grounds upon which the Act permits an arbitration award to be set aside, reveal the legislature's intention that the agreements to arbitrate and the resulting arbitration awards be treated the same in family court as in any other court.

*Id*. at 484–85, 520 S.E.2d at 337 (footnote and citations omitted).

Thus, the court held that the family court may 1) modify or correct an award only under section 15-48-140; 2) vacate the award under section 15-48-130; or 3) vacate the award under the non-statutory ground of "manifest disregard or perverse misconstruction of the law." *Id*. at 485–86, 520 S.E.2d at 338 (quoting *Trident Tech. Coll. v. Lucas & Stubbs, Ltd.*, 286 S.C. 98, 108, 333 S.E.2d 781, 787 (1985)). "Otherwise, the family court must confirm the arbitration award." *Id*. at 486, 520 S.E.2d at 338. However, in a footnote, the court indicated its "holding . . . is limited to arbitration agreements resolving issues of property or alimony, and *does not apply*

*to agreements involving child support or custody*." *Id*. at 486 n.6, 520 S.E.2d at 338 n.6 (emphasis added).

Consistent with *Swentor*, we do not believe the limited powers of a court in regard to a binding arbitration award can be reconciled with our state's precedent requiring that the family court decide children's issues in the best interest of the children. Our courts have consistently held the "[f]amily [c]ourt is vested with the exclusive jurisdiction to ensure that, in all matters concerning a child, the best interest of the child is the paramount consideration." *Harris v. Harris*, 307 S.C. 351, 353, 415 S.E.2d 391, 393 (1992); *see also In re Doran*, 129 S.C. 26, 31, 123 S.E. 501, 503 (1924) ([T]he fundamental principle [is] that the controlling consideration is the best interests of the child . . . ."); 67A C.J.S. *Parent & Child* § 55, Westlaw (database updated September 2019) ("It is the child's best interests that are paramount."). Accordingly, the family court is charged with making "the final custody determination in the best interest of the child based upon the evidence presented." S.C. Code Ann. § 63-15-230 (Supp. 2019); *see also* 67A C.J.S. *Parent & Child* § 60, Westlaw (database updated September 2019) ("A court errs if it merely follows an agreement of the parties as to the custody of the children without receiving evidence that it would, in fact, be in the best interests of the children."). Similarly, "[t]he welfare and best interests of the child are the primary considerations in determining visitation." *Smith v. Smith*, 386 S.C. 251, 272, 687 S.E.2d 720, 731 (Ct. App. 2009). As such, this court has held, "[i]n the final analysis[,] it is the family court [that] is charged with the authority and responsibility for protecting the interest of minors involved in litigation, *not the guardian or any other person whom* the court may appoint to assist it." *Stefan v. Stefan*, 320 S.C. 419, 422, 465 S.E.2d 734, 736 (Ct. App. 1995) (emphasis added); *see also* 67A C.J.S. *Parent & Child* § 60 ("[A family] court has an independent responsibility to determine questions of custody and visitation of minor children according to their best interests, which responsibility cannot be controlled by an agreement or stipulation of the parties."). Furthermore, this court has "caution[ed] family court judges *NOT* to delegate *any* responsibility to a [third party] in regard to visitation of children with parents[,]" but "to strictly adhere to the holding in *Stefan*." *Hardy v. Gunter*, 353 S.C. 128, 138, 577 S.E.2d 231, 236 (Ct. App. 2003).

Because the family court may not delegate its authority to ensure that issues regarding children are resolved in their best interest, our supreme court has provided that family courts "have continuing jurisdiction to do whatever is in the best interests of the child regardless of what the separation agreement specifies." *Moseley v. Mosier*, 279 S.C. 348, 351, 306 S.E.2d 624, 626 (1983); *see also Lunsford v. Lunsford*, 277 S.C. 104, 105, 282 S.E.2d 861, 862 (1981) ("No agreement can

prejudice the rights of children.").  This court clarified the holding in *Moseley* by stating "*Moseley* makes it clear that *except for matters relating to children, over which the family court retains jurisdiction to do whatever is in their best interest,* parties to a separation agreement may 'contract out of any continuing judicial supervision of their relationship by the court.'" *Ex Parte Messer*, 333 S.C. 391, 395, 509 S.E.2d 486, 487–88 (Ct. App. 1998) (emphasis added) (quoting *Moseley*, 279 S.C. at 353, 306 S.E.2d at 627).  "Therefore, parties to a separation agreement may agree to submit all disputes, *other than those involving their children*, to arbitration and thus deprive the family court of its traditional powers of enforcement over those disputes."  *Id*. at 395, 509 S.E.2d at 488 (emphasis added).

Accordingly, we find that our state's precedent precludes the submission of issues involving child custody and visitation to binding arbitration as such action would constitute an improper delegation of the family court's authority to determine issues in the best interest of the child.  *See Stefan*, 320 S.C. at 422, 465 S.E.2d at 736 ("In the final analysis[,] it is the family court [that] is charged with the authority and responsibility for protecting the interest of minors involved in litigation, not the guardian *or any other person whom* the court may appoint to assist it." (emphasis added)); 67A C.J.S. *Parent & Child* § 60 ("[A family] court has an *independent responsibility to determine questions of custody and visitation of minor children according to their best interests*, which responsibility cannot be controlled by an agreement or stipulation of the parties." (emphasis added)).  As explained in *Swentor*, the family court has four options when presented with an award obtained under the Uniform Arbitration Act: 1) confirm the award; 2) modify or correct the award under section 15-48-140; 3) vacate the award under section 15-48-130; or 4) vacate the award on the ground of manifest disregard or perverse misconstruction of the law.  Notably, section 15-48-140 permits the court to correct only miscalculations, mistakes, awards on matters not submitted to arbitration, or the form of an award, so long as the modification does not affect the underlying merits of the award.  Moreover, all of the grounds for vacating an arbitration award under section 15-48-130 involve the fairness of the arbitration proceedings themselves, not the merits of the award.  Therefore, if child custody and visitation were subject to binding arbitration, the family court would not have the statutory authority to vacate or modify the arbitrator's award based on a finding that it was not in the best interest of the children.[10]  *See Moseley*, 279 S.C. at 351, 306 S.E.2d at 626 ("[F]amily courts

---

[10] It would not constitute binding arbitration if the family court could modify an arbitration award in the child's best interest.  *See Swentor*, 336 S.C. at 484, 520 S.E.2d at 337 ("Given our determination that *the Arbitration Act and the family court's general power to review and approve agreements in domestic relations cases*

have continuing jurisdiction to do whatever is in the best interests of the child regardless of what the separation agreement specifies."); *Lunsford*, 277 S.C. at 105, 282 S.E.2d at 862 ("No agreement can prejudice the rights of children."). Thus, allowing an arbitrator to make the final determination regarding issues involving custody and visitation constitutes an improper delegation of the family court's authority. *See Stefan*, 320 S.C. at 422, 465 S.E.2d at 736 ("In the final analysis[,] *it is the family court [that] is charged with the authority and responsibility for protecting the interest of minors involved in litigation*, not the guardian *or any other person whom* the court may appoint to assist it." (emphases added)); *Hardy*, 353 S.C. at 138, 577 S.E.2d at 236 (cautioning "family court judges *NOT* to delegate *any* responsibility to a [third party] in regard to visitation of children with parents"); *Messer*, 333 S.C. at 395, 509 S.E.2d at 488 ("[P]arties to a separation agreement may agree to submit all disputes, *other than those involving their children*, to arbitration and thus deprive the family court of its traditional powers of enforcement over those disputes." (emphasis added)).

The problems with submitting children's issues to binding arbitration are on full display in the case at bar. Here, the arbitrator's award was confirmed by the family court without a determination that it was in the best interest of the children. *See* S.C. Code Ann. § 63-15-230 ("The court shall make the final custody determination in the best interest of the child based upon the evidence presented."); *see also* 67A C.J.S. *Parent & Child* § 60 ("A court errs if it merely follows an agreement of the parties as to the custody of the children without receiving evidence that it would, in fact, be in the best interests of the children."). As a result, the arbitrator, rather than the family court, ultimately resolved the issues of custody and visitation. *See Stefan*, 320 S.C. at 422, 465 S.E.2d at 736 ("In the final analysis[,] *it is the family court [that] is charged with the authority and responsibility for protecting the interest of minors involved in litigation*, not the guardian *or any other person whom* the court may appoint to assist it." (emphases added)); *Hardy*, 353 S.C. at 138, 577 S.E.2d at 236 (cautioning "family court judges *NOT* to delegate *any* responsibility to a [third party] in regard to visitation of children with parents").

---

*are fundamentally incompatible*, we conclude that the Arbitration Act *prohibits* the family court from exercising this power when presented with arbitration agreements." (emphases added)); *id*. at 485, 520 S.E.2d at 337 ("[T]he purpose and framework of the Arbitration Act, as well as the limited grounds upon which the Act permits an arbitration award to be set aside, reveal the legislature's intention that the agreements to arbitrate and the resulting arbitration awards *be treated the same in family court as in any other court*." (emphasis added)).

Based on the foregoing, we find the submission of issues involving custody and visitation to binding arbitration violates the established law of South Carolina, which prohibits the family court from delegating its authority to determine children's issues in the best interest of the children.

### c. Effect on the order

Because court rules and our state's established law preclude the submission of children's issues to binding arbitration, the family court did not have subject-matter jurisdiction to sanction binding arbitration of issues involving custody and visitation or to confirm the arbitrator's award. *See Graham*, 340 S.C. at 355, 532 S.E.2d at 263 ("The jurisdictional authority of the [family] court is set forth in the Children's Code."); *see also* S.C. Code Ann. § 63-3-530(A)(39) ("The family court has exclusive jurisdiction: to . . . issue consent orders authorizing parties to engage in any form of alternate dispute resolution *[that] does not violate the rules of the court or the laws of South Carolina . . . .*" (emphasis added)); *State v. Bridgers*, 329 S.C. 11, 14, 495 S.E.2d 196, 197–98 (1997) ("The General Assembly is presumed to be aware of the common law[.]").  As a result, the order confirming the arbitrator's award is void *ab initio*. *See Katzburg*, 410 S.C. at 187, 764 S.E.2d at 5 ("A judgment of a court without subject[-]matter jurisdiction is void . . . ." (quoting *Gainey*, 382 S.C. at 424, 675 S.E.2d at 797)).  Thus, the family court properly found that it lacked subject-matter jurisdiction to enforce the order and arbitration award through contempt proceedings. *See Arnal*, 371 S.C. at 522, 641 S.E.2d at 424 ("[A party] cannot be held in contempt for violating an order [that] was void *ab initio* for a lack of jurisdiction."); *Long*, 226 S.C. at 609, 86 S.E.2d at 482 ("[D]isobedience of a void Order, Judgment, or Decree, or one issued without jurisdiction of subject matter and parties litigant, is not 'contempt[.]'"); *Katzburg*, 410 S.C. at 187, 764 S.E.2d at 5 ("A court[] lacking subject[-]matter jurisdiction[] cannot enforce its own decrees." (quoting *Hallums v. Bowens*, 318 S.C. 1, 3, 428 S.E.2d 894, 895 (Ct. App. 1993))).

## II.   Preservation

We find Father's remaining issues have not been preserved for appellate review, as they were not raised to and ruled upon by the family court.[11]

---

[11] Father asserts the rules of preservation should be loosely applied to his arguments because he did not have time to adequately prepare for Mother's defenses at the rule to show cause hearing, as Mother served him with her return the day before the hearing.  We reject this argument as Mother served Father with her return in accordance with the South Carolina Rules of Family Court. *See* Rule 14(f), SCRFC

"In order for an issue to be preserved for appellate review, it must have been raised to and ruled upon by the [family court]." *State v. Dunbar*, 356 S.C. 138, 142, 587 S.E.2d 691, 693 (2003). "Issues not raised and ruled upon in the [family] court will not be considered on appeal." *Id*. at 142, 587 S.E.2d at 693–94. "Error preservation rules do not require a party to use the exact name of a legal doctrine in order to preserve an issue for appellate review." *State v. Brannon*, 388 S.C. 498, 502, 697 S.E.2d 593, 595 (2010). "Instead, a litigant is only required to fairly raise the issue to the [family] court, thereby giving it an opportunity to rule on the issue." *Id*. at 502, 697 S.E.2d at 595–96. However, "[a]n issue may not be raised for the first time in a motion to reconsider." *Johnson v. Sonoco Prods. Co.*, 381 S.C. 172, 177, 672 S.E.2d 567, 570 (2009); *Dixon v. Dixon*, 362 S.C. 388, 399, 608 S.E.2d 849, 854 (2005) (holding an issue raised for the first time in a Rule 59, SCRCP motion is not preserved for appellate review). Conversely, "[i]f the losing party has raised an issue in the lower court, but the court fails to rule upon it, the party must file a motion to alter or amend the judgment in order to preserve the issue for appellate review." *I'On, L.L.C. v. Town of Mt. Pleasant*, 338 S.C. 406, 422, 526 S.E.2d 716, 724 (2000).

Estoppel and Waiver

First, Father argues Mother waived any challenge to the family court's subject-matter jurisdiction by voluntarily participating in the arbitration. Father further argues Mother is estopped from challenging the validity of the order confirming the award because she procured and accepted the benefits of arbitration. Mother argues this issue has not been preserved for appellate review because Father raised it for the first time in his Rule 59(e), SCRCP motion. Father argues this issue is preserved because Father articulated the basis for estoppel—that Mother agreed to the arbitration—at the hearing before the family court.

At the outset, we note that Father argues only that he articulated the basis for estoppel before the family court, but does not contend that he articulated the basis for waiver.[12] Regarding estoppel, as Father notes in his brief, to be estopped from

_____

("If at the contempt proceeding[,] the responding party intends to seek counsel fees and costs, *or other appropriate relief permitted by law*, then *he shall serve a return to the rule to show cause prior to the commencement of the hearing*, unless a Family Court judge requires a return to be served at some other time." (emphases added)).

[12] Regardless, subject-matter jurisdiction cannot be waived. *See Johnson*, 372 S.C. at 284, 641 S.E.2d at 897 ("[L]ack of subject[-]matter jurisdiction in a case may not be waived and ought to be taken notice of by an appellate court."); *State v. Gentry*,

challenging the validity of an order or judgment, a party must accept the benefits of the void judgment. *See Edwards v. Edwards*, 254 S.C. 466, 470, 176 S.E.2d 123, 125 (1970) ("Since he proposed the transfer of the property and *has accepted the benefits accruing to him therefrom*, he is now estopped to assert the invalidity of the judgment." (emphasis added)); *Scheper v. Scheper*, 125 S.C. 89, 105, 118 S.E. 178, 184 (1923) ("Even whe[n] one who did not procure it *accepts the benefits of a void judgment*, he is estopped to assert its invalidity." (emphasis added)). Here, while he was before the family court, Father never argued that Mother had accepted the benefits of the order. Rather, Father first raised this precise argument in his Rule 59(e) motion. *See Sonoco Prods. Co.*, 381 S.C. at 177, 672 S.E.2d at 570 ("An issue may not be raised for the first time in a motion to reconsider."). Accordingly, this issue has not been preserved for appellate review.

Law of the Case

Second, Father argues the family court erred in refusing to enforce the unappealed order confirming the arbitration award because it became the law of the case. Mother argues this issue has not been preserved for appellate review because Father raised it for the first time in his Rule 59(e), SCRCP motion. Father argues this issue is preserved because he argued to the family court that the arbitration award had been approved by another judge.

At the hearing, Father indicated the agreement to arbitrate and the arbitration award had both been adopted as orders of the family court. However, Father did not provide that the orders were unappealed or argue that they were binding. As such, Father's reference to the prior orders was likely viewed by the family court in the context of providing the procedural posture for the action, not as an argument regarding the law of the case. Consequently, we do not find that Father raised this issue with "sufficient specificity" to allow the family court to rule on it. *See Brannon*, 388 S.C. at 502, 697 S.E.2d at 595–96 ("[A] litigant is only required to fairly raise the issue to the [family] court, *thereby giving it an opportunity to rule on the issue*." (emphasis added)); *S.C. Dep't of Transp. v. First Carolina Corp. of S.C.*, 372 S.C. 295, 302, 641 S.E.2d 903, 907 (2007) (noting that an issue must be raised

---

363 S.C. 93, 100, 610 S.E.2d 494, 498 (2005) ("[S]ubject-matter jurisdiction, because it involves a court's power to hear a case, can *never* be forfeited or waived." (emphasis added) (quoting *United States v. Cotton*, 535 U.S. 625, 630 (2002))).

with "sufficient specificity" to be preserved for appellate review).  Thus, the issue has not been preserved for appellate review.[13]

Public Policy

Finally, Father argues the family court erred in refusing to enforce the arbitration award because South Carolina's public policy strongly favors resolving issues through ADR and the validity of arbitration agreements.  Mother argues this issue has not been preserved for appellate review because Father raised it for the first time in his Rule 59(e), SCRCP motion.  Father argues he preserved the issue for appeal by invoking policy considerations in his argument that the arbitration award should not be set aside, specifically, the length of time and monetary expense, the need to not undo the results, and the best interest of the children.  We disagree with Father.

Because the family court did not rule on any public policy considerations, Father was required to raise these issues in his Rule 59(e) motion.  *See I'On*, 338 S.C. at 422, 526 S.E.2d at 724 ("If the losing party has raised an issue in the lower court, *but the court fails to rule upon it*, the party must file a motion to alter or amend the judgment in order to preserve the issue for appellate review." (emphasis added)); *see also Elam v. S.C. Dep't of Transp.*, 361 S.C. 9, 24, 602 S.E.2d 772, 780 (2004) ("A party *must* file such a motion when an issue or argument has been raised, *but not ruled on*, in order to preserve it for appellate review." (second emphasis added)).  However, Father's Rule 59(e) motion made no mention of South Carolina's public policy favoring alternative dispute resolution and the validity of arbitration agreements.  Rather, Father baldly asserted that a ruling precluding parties from submitting issues of custody and visitation to binding arbitration "would dramatically reshape [f]amily [c]ourt practice in this state" and cause a backlog of cases with an abundance of issues that must be decided on the record.  We do not find that this assertion equates to an argument that the family court's ruling was contrary to South Carolina's public policy favoring ADR.  Accordingly, this issue has not been preserved for appellate review.

## III.    Burden of proof for contempt

---

[13] Regardless, a judge is not bound to enforce a prior order that is void a*b initio* for want of subject-matter jurisdiction.  *See Katzburg*, 410 S.C. at 187, 764 S.E.2d at 5 ("A *court*[] lacking subject[-]matter jurisdiction[] *cannot* enforce its own decrees." (emphases added) (quoting *Hallums*, 318 S.C. at 3, 428 S.E.2d at 895)).

As an additional sustaining ground, Mother argues the family court's order should be affirmed because Father did not satisfy his burden of proof. However, we need not address this issue as our finding that the family court did not have subject-matter jurisdiction to enforce the order confirming the arbitration award is dispositive in this case. *See I'On*, 338 S.C. at 420, 526 S.E.2d at 723 ("It is within the appellate court's discretion whether to address any additional sustaining grounds."); *Futch v. McAllister Towing of Georgetown, Inc.*, 335 S.C. 598, 613, 518 S.E.2d 591, 598 (1999) (providing that an appellate court need not address remaining issues when resolution of a prior issue is dispositive).

## CONCLUSION

Based on the foregoing, we hold that the family court does not have subject-matter jurisdiction to sanction or approve binding arbitration of children's issues. Accordingly, we find the family court properly determined that it did not have subject-matter jurisdiction to enforce the arbitration award. Therefore, we affirm the family court's order dismissing the contempt action.

**AFFIRMED**

**SHORT and THOMAS, JJ., concur.**